### In re PINE LAKE VILLAGE APARTMENT CO., Debtor.

Thomas J. HARTIGAN, as Trustee of The Twenty Seven Trust under that certain Trust Agreement dated as of May 1, 1980, Plaintiff,

v.

### PINE LAKE VILLAGE APARTMENT CO., Defendant.

Bankruptcy No. 81–B–20737.
No. 82 Adv. 6001.

United States Bankruptcy Court,
S. D. New York.

Jan. 20, 1982.

Burns & Fox, New York City, and Wexler, Weisman, Forman & Shapiro, P. C., Philadelphia, Pa., for debtor-defendant.

Zalkin, Rodin & Goodman, New York City, for plaintiff.

## DECISION ON ORDER TO SHOW CAUSE WHY PROCEEDING SHOULD NOT BE DISMISSED ON THE GROUNDS SET FORTH IN SECTION 305(a)(1) OF BANKRUPTCY CODE

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The plaintiff, the sole mortgagee of the debtor's garden apartments complex, has moved pursuant to Code § 305(a)(1) to dismiss the debtor's Chapter 11 petition. The plaintiff also seeks to condition the debtor's use of rents collected from the premises on

the ground that such funds constitute cash collateral for which adequate protection is required under Code § 363(c)(2). An adversary proceeding for relief from the automatic stay under Code § 362 is also pending and is scheduled to be heard next week.

The Chapter 11 case was initiated by the debtor on December 23, 1981. Its principal asset consists of an apartment complex in Lindenwold, New Jersey, which is encumbered by a first mortgage held by the plaintiff on which there is presently claimed a balance of $13,816,837.00. The debtor's schedules list the book value of the property at $5,540,082.00. The mortgage was originally held by Chase Manhattan Mortgage and Realty Trust and was assigned to the plaintiff as a consequence of a plan confirmed in a Chapter XI proceeding involving Chase. The mortgage consolidation agreement provides that the debtor will, at the mortgagee's request, enter into a management agreement with a manager for the premises on terms and conditions satisfactory to the mortgagee. Accordingly, the debtor entered into a management agreement with a managing company selected by the plaintiff mortgagee. The original managing company, with the consent of the debtor and the plaintiff-mortgagee, assigned its rights and obligations under the management agreement to John Erickson Co. The mortgage provides that the cash flow from the premises was to be applied to operating expenses with the balance to be remitted to the plaintiff-mortgagee. In September, 1971, the debtor directed John Erickson Co. to withhold all further payments of net cash flow to the plaintiff-mortgagee. The debtor also demanded that John Erickson Co. turn over to it all accumulated net cash flow in Erickson's possession. When John Erickson Co. refused to comply with the debtor's demand, the debtor terminated the managing agreement and advised the tenants to make rent payments directly to the debtor.

In December 1981, the plaintiff-mortgagee commenced actions in the Superior Court of New Jersey, Camden County, Chancery Division, against the debtor and others to foreclose the mortgage on the premises and to require that John Erickson Co. be continued in possession and control of the premises. The court entered a provisional order dated December 14, 1981, enjoining the debtor from expending any rents collected from tenants of the premises. Thereafter the debtor filed its Chapter 11 petition with this court on December 23, 1981.

The debtor's schedules reveal that the claims of unsecured creditors amount to approximately $44,952.06. The plaintiff-mortgagee asserts that these bills would have been paid in a timely fashion but for the ouster of John Erickson Co. as manager of the premises.

## APPLICABILITY OF CODE § 305

Code § 305 reads in relevant part as follows:

"§ 305 Abstention.

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

(1) the interests of creditors and the debtor would be better served by such dismissal or suspension;"

Although the words "dismiss" and "suspend" are used in this provision, the dominant theme, as expressed in the caption, is "Abstention", on the theory that there are cases in which it would be appropriate for the court to decline jurisdiction. Voluntary out of court arrangements between the debtor and its creditors and pending foreign proceedings involving the debtor and its creditors are two examples where abstention would be appropriate. As to out of court arrangements, the legislative history indicates that in some situations the interests of the creditors and the debtor might be better served by a dismissal or suspension of all proceedings in a bankruptcy case, especially:

"[I]f an arrangement is being worked out by creditors and the debtor out of court, there is no prejudice to the rights of creditors in that arrangement, and an *involuntary* case has been commenced by

a few recalcitrant creditors to provide a basis for future threats to extract full payment. The less expensive out-of-court workout may better serve the interests in the case." (Emphasis added) *H.R. 95–595*, 95th Cong. 1st Sess. (1977) 325. *S.R. No. 95–989*, 95th Cong. 2d Sess. (1978) 36, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6281, 5822.

Four of the cases cited in the plaintiff-mortgagee's brief were involuntary bankruptcy cases against debtors where proceedings involving the debtors and creditors commenced prior to the involuntary cases would adequately serve both the interests of the debtors and creditors without additional waste of time and resources. *In re Michael S. Starbuck, Inc.*, 14 B.R. 134 (Bkrtcy.S.D.N.Y.1980); *In re Bioline Laboratories, Inc.*, 9 B.R. 1013 (Bkrtcy.E.D.N.Y. 1980); *In re R. V. Seating, Inc.*, 8 B.R. 663 (Bkrtcy.S.D.Fla.1981); *In re Sun Word Broadcasters, Inc.*, 5 B.R. 719 (Bkrtcy.M.D. Fla.1980). A fifth case cited by the plaintiff-mortgagee also involved an involuntary bankruptcy case under Chapter 7, where there were no assets for the court to administer; therefore dismissal was appropriate although Code § 305 was never mentioned. *In re Arker*, 6 B.R. 632 (Bkrtcy.E.D.N.Y. 1980).

Three other cases cited by the plaintiff-mortgagee are inapposite to a motion under Code § 305. *In re Castle Ranch of Ramona, Inc.*, 3 B.R. 45 (Bkrtcy.S.D.Cal.1980), involved a lifting of the automatic stay under Code § 362. Similarly, *In re Victory Construction Co. Inc.*, 9 B.R. 549 (Bkrtcy.C. D.Cal.1981) dealt with the lifting of the automatic stay under Code § 362 for cause, in that the petition was not filed in good faith. In the third case cited, *In re Century City, Inc.*, 8 B.R. 25 (Bkrtcy.D.N.J.1980), the court seriously questioned the applicability of Code § 305 to the issue before it (page 29) and dismissed the Chapter 11 case for bad faith and as a misuse of court process to recapture previously transferred parcels of land.

The plaintiff-mortgagee also quotes extensively from *In re Alison Corporation*, 9 B.R. 827 (Bkrtcy.S.D.Cal.1981). However, this case involved a motion to dismiss a Chapter 11 proceeding in the context of whether the petition was filed in good faith. The court dismissed the case on the ground that the petition had not been filed in good faith and was an imposition upon the jurisdiction of the court. The applicability of Code § 305 was neither discussed nor cited.

The only case cited in the plaintiff-mortgagee's brief where a debtor voluntarily filed under the Bankruptcy Code and opposed a motion under Code § 305 is *In re Fast Food Properties, Ltd. No. 1*, 5 B.R. 539 (Bkrtcy.C.D.Cal.1980). Unlike this case, the debtor had no unsecured creditors. Additionally the debtor had defaulted under its mortgages. Here the debtor contends that there is no mortgage default and that it had the right to terminate the managing agent John Erickson Co. The court there concluded that the Chapter 11 case was filed solely for the purpose of frustrating the enforcement of the power of sale provision under the deed of trust and dismissed the case under Code § 305 on the theory "... that 11 U.S.C. § 305 does not restrict my power to dismiss, but rather enlarges it" (p. 540). Therefore, on its own motion, the court dismissed the case.

This court would be hard pressed to conclude that a dismissal of this case would serve the interests of the debtor as well as those of the plaintiff-mortgagee. To be sure, Code § 305 expressly requires a determination that not only will the interests of creditors be better served by a dismissal or suspension, but also that "the interests of ... the debtor would be better served by such dismissal or suspension." Obviously, when the debtor is involuntarily thrown into bankruptcy during a pending out of court arrangement, the debtor's interests would be better served by allowing the debtor's choice of method to proceed; Code § 305 recognizes this approach. It defies credulity to say that the debtor's interest would be better served by a dismissal when the debtor voluntarily sought the mechanics of Chapter 11 for the purpose of rehabilitation and a fresh start.

Code § 305(c) expressly states that an order with respect to dismissing or suspending a case under Code § 305(a) "is not reviewable by appeal or otherwise." Accordingly, a debtor who unsuccessfully resists a motion to dismiss a voluntary rehabilitation case under Chapter 11 has no further recourse. Certainly this section should be used sparingly and not as a substitute for a motion to dismiss under Code § 1112(b), where one of the nine enumerated grounds must be established before a Chapter 11 case may be dismissed. This point was noted in *In re Luftek, Inc.*, 6 B.R. 539 (Bkrtcy.E.D.N.Y.1980) at page 548:

"It also is apparent that the courts will have to exercise great care in using the discretion granted by section 305(a) to dismiss a case. To be sure, it could be said that dismissal would be in the interests of creditors and the debtor in many of the proceedings commenced under the Bankruptcy Code; this Court could dispose of much of its calendar if its discretion was unbridled. There is an inherent risk to our system of jurisprudence in any Act of Congress which gives the courts such broad powers to refuse jurisdiction over a case. This risk is compounded by the finality and non-appealability of an order entered under this section. Indeed, by giving an example of a situation in which abstention or dismissal would be appropriate, Congress has indicated that it intended section 305(a) dismissals to be the exception rather than a rule.

In *Matter of Nina Merchandise Corp.*, 5 B.R. 743 (Bkrtcy.S.D.N.Y.1980), the court was reluctant to dismiss an apparently well-founded Chapter 11 petition because it did not see how a dismissal could promote the interests of the debtor. The court opined that abstention would be an abdication of its responsibility. Similarly, in *Matter of WPAS, Inc.*, 6 B.R. 44 (Bkrtcy.Md.Fla.) the court reasoned that while a dismissal under Code § 305 might be in the best interests of a specific creditor, a dismissal would not be in the best interests of the debtor or its other creditors.

In this case, the plaintiff-mortgagee's foreclosure action, following the debtor's dismissal of the "independent" managing agent selected by the plaintiff-mortgagee, can hardly be characterized as the type of prebankruptcy pending proceeding having as its objective the resolution of the financial difficulties of the debtor with its creditors. Rehabilitation is affordable to this debtor only under the shelter of the salutory features available in a Chapter 11 case. To abstain from entertaining jurisdiction of a Chapter 11 case shortly after its commencement, when jurisdiction clearly exists, without proof of a ground for dismissal as authorized under Code § 1112(b), is neither in the debtor's best interests nor is it a proper application of the nonappealable concept of abstention prescribed under Code § 305.

The plaintiff-mortgagee argues that the debtor has but one secured creditor and that the debtor admittedly has no equity in its principal asset. Therefore the plaintiff-mortgagee concludes that this court should not permit its jurisdiction to be invoked for the sole purpose of staying a mortgagee from foreclosing upon the debtor's single asset in which there is no equity. If this court were to apply Code § 305 at the outset to every case that met this description most of the Chapter 11 cases and all of the Chapter 13 cases in this court would disappear under the magic wand of "abstention". Foreclosure and liquidation would replace the automatic stay under Code § 362. This is not to say that this plaintiff-mortgagee is without remedy. Indeed, next week this court will entertain the plaintiff-mortgagee's adversary proceeding to lift the automatic stay under Code § 362(d). The fact that the debtor lacks equity in the property is not controlling if the plaintiff-mortgagee is adequately protected. *In re Thomas Parker Enterprises Inc.*, 10 B.R. 783 (Bkrtcy.D. Conn.1981).

Even if the plaintiff-mortgagee were to elect under Code § 1111(b) against a valuation cram down under Code § 506(a) to the extent of its secured claim, so that the debtor would be required to treat the plaintiff-mortgagee's entire allowed claim as ful-

ly secured, the debtor would nevertheless be entitled to string out such allowed claim over a period of time so long as the discounted value equals the value of the plaintiff-mortgagee's collateral. Code § 1129(b)(2)(A)(i). Therefore it is premature to conclude at this time that rehabilitation is not available to this debtor and that the case should be dismissed under Code § 305.

## CASH COLLATERAL

The rental income from the property has been used solely for the operation, maintenance and repair of the property. The dispute between the parties centers on the debtor's argument that not enough money was expended for repairs and maintenance by the plaintiff-mortgagee's selected managing agent, John Erickson Co. and that allegedly large amounts were siphoned off to the plaintiff-mortgagee as representing net cash flow after the payment of operating expenses. The debtor argues that more of the cash flow should be used for repair purposes so as to build up the value of the property.

The plaintiff-mortgagee notes that the debtor is required by Code § 363(c)(4) to segregate and account for all cash collateral in its possession or control. It is the plaintiff-mortgagee's belief that the debtor is not segregating rent proceeds but is expending them on an ongoing basis in contravention of Code § 363. Therefore, the plaintiff-mortgagee requests relief in the form of a preliminary and mandatory injunction to preserve the status quo pending a determination of the adversary proceeding seeking relief from the automatic stay.

Cash collateral is defined in Code § 363(a).[1] Under Code § 363(c)(2),[2] a debtor may not use cash collateral unless an entity that has an interest in it (A) consents

or (B) such use is authorized by the court after notice and a hearing.

The debtor argues that the mortgage documents reflect that the rent from the property is to be used for operating expenses and that payments on interest are to be made only in the event that an excess exists after operating expenses are paid. Therefore, the debtor reasons that the plaintiff-mortgagee consented to the use of the cash collateral for the operation of the property, including repairs. However, this consent was given *prior* to the commencement of the Chapter 11 case. Nevertheless, the debtor asserts that there is nothing in Code § 363 or the legislative history which indicates that "consent" to the use of cash collateral must occur *after* the filing of the petition under Chapter 11.

No decided case appears to deal with this issue because usually the operative agreement in which the consent was found was itself in default prior to the Chapter 11 case so that the consent was nullified by the default. The debtor contends that the mortgage in question is not in default and that its dismissal of the John Erickson Co., as managing agent, was justifiable for the protection of the property and did not trigger a mortgage default. Therefore, the debtor maintains that if the secured party previously consented to the debtor's use of cash collateral and nothing has occurred to nullify such consent, no provision of the Bankruptcy Code interferes with the continued validity of the secured party's agreement. The debtor reasons that the Bankruptcy Code was not intended to give the secured party greater rights than it had under its own documents.

■■■■ This position elides the point that the concept of cash collateral is a feature of and defined in, the Bankruptcy Code and is

---

1. § 363. Use, sale, or lease of property.

(a) In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents in which the estate and an entity other than the estate have an interest.

2. § 363(c)(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

operative only after the commencement of a bankruptcy case under Title 11 U.S.C. Whatever rights and obligations existed between the parties as to the use of cash collateral before the commencement of the case are subject to the provisions under Code § 363(c)(2). It is not for the debtor to say unilaterally that there is no default under the mortgage. The mortgagee says otherwise. This is an issue that has yet to be determined. However, the debtor's right to use cash collateral should not be held in abeyance until a determination is made as to whether or not the secured party's prepetition consent to the use of cash collateral continues to have vitality. Therefore, regardless of the prepetition conduct of the parties, Code § 363(c) imposes immediately ascertainable rights and restrictions as to cash collateral following the commencement of a bankruptcy case. A consent that was given before the expectation of a bankruptcy case cannot be treated as a continuing consent after the filing of a petition for relief under the Bankruptcy Code. The consent to the use of cash collateral contemplated under Code § 363(c)(2)(A) must, of necessity, be regarded as a post-petition consent. Indeed, subsection (A) employs the present tense, "consents" and not the past tense, "consented" or "has consented". Even if the operative prepetition document containing the so-called consent were not in default at the commencement of the case, such a consent would certainly not permit a trustee in a Chapter 7 bankruptcy case who is authorized under Code § 721 to operate a debtor's business, to continue to use cash collateral without thereafter obtaining either the secured party's consent or appropriate authorization from the court. Code § 363 should apply in the same fashion in a Chapter 11 case, since Code § 103(a) directs that Chapter 3 (in which Code § 363 is contained) applies with equal force in Chapter 11 as in Chapter 7.

 Notwithstanding the absence of consent to the debtor's use of the post-petition cash collateral, subsection (B) in Code § 363(c)(2) permits the court, after notice and a hearing, to authorize the debtor to use cash collateral. In the case of *In re Gaslight Village, Inc.*, 6 B.R. 871 (Bkrtcy. 1980) at p. 873, this court said:

"Clearly, the rental income from the mortgaged property must be regarded as 'cash collateral' as defined in Code § 363(a) being 'cash ... or other cash equivalents in which the estate or an entity other than the estate have an interest.' The debtor's use of such cash collateral entitles the plaintiffs, as assignees of the right to this collateral, to request the court under Code § 363(e) to prohibit or condition such use so as to provide adequate protection of their interest in the cash collateral. If the court finds that the debtor should not have unfettered right to use the cash collateral the court should fashion an order either prohibiting such use or directing that *the debtor may use the cash collateral only for the actual, necessary and ordinary expenses concerning the mortgaged property.*" (Emphasis added)

In this case there is no claim that the debtor has diverted any portion of the rent income from the property for its own account. On the contrary, the debtor professes to want to plow back more of the rent income for maintenance and repair of the property so that less of the net cash flow would be turned over to the mortgagee and applied against interest. Manifestly, the application of the rent income solely to maintain and repair the property so as to prevent further deterioration will enhance the value of the property which serves as the collateral for the plaintiff-mortgagee's claim. The protection and maintenance of the plaintiff-mortgagee's collateral, without any diversion of funds to the debtor, clearly ensures that the plaintiff-mortgagee's investment is adequately protected. However, the debtor should not have an unlimited discretion as to what it will do with the funds. Therefore, the debtor shall, within seven days, submit a proposal to the court formulating the manner in which it will apply the funds and providing for appropriate input and consent from the plaintiff-mortgagee. The parties should also agree

as to type and minimum amount of repairs and maintenance that may be undertaken without the prior approval of the plaintiff-mortgagee. All of the expenditures are to be appropriately accounted for and documented.

### REINSTATEMENT OF JOHN ERICKSON CO.

The plaintiff-mortgagee notes that it was the debtor's dismissal of John Erickson Co., as managing agent, that prompted the foreclosure action in the state court. It is argued that the displacement of Erickson as manager of the premises was wrongful and will cause an increase in vacant apartments. On the other hand, the debtor claims that Erickson failed to make all the repairs required to keep up the value and integrity of the property so as to divert the cash flow to the plaintiff-mortgagee. The debtor desires to engage another manager who the debtor says "will be independent and qualified" to operate the property.

Certainly there is no requirement under the Bankruptcy Code that the debtor must retain the manager selected by the mortgagee. Indeed, Code § 365 authorizes the debtor to assume or reject executory contracts. Thus, had the debtor not terminated Erickson's management agreement before the commencement of this case, it could seek such relief under Code § 365. Therefore, this court will not direct the debtor to assume an executory agreement that it neither wishes to assume and which could be rejected, but for the earlier termination, whether rightly or wrongly.

In sum, the plaintiff-mortgagee's motion for an order dismissing this case under Code § 305 is denied. Its alternative request to prevent the debtor's use of cash collateral is denied, except that the debtor is directed to structure and submit within seven days a proposal as to the manner in which it will apply the funds, providing for minimum repairs that may be made without prior approval. That portion of the motion seeking to reinstate John Erickson Co. under the terminated management contract is denied.

IT IS SO ORDERED.