In re QUEEN CITY GRAIN COMPANY, Debtor.

Bankruptcy No. 1–83–01151.

United States Bankruptcy Court, S.D. Ohio, W.D.

Aug. 19, 1983.

Paul L. Wallace, Columbus, Ohio, for Evans Railcar Leasing Co.

Ronald Goodman, Cincinnati, Ohio, for debtor.

Thomas J. Geygan, Cincinnati, Ohio, interim trustee.

James A. Kiger, Washington C.H., Ohio, for Drummond group.

James L. Butler, Washington C.H., Ohio, for Charles Rivers and Baxter Rivers & Sons.

## DECISION AND ORDER ON MOTIONS

BURTON PERLMAN, Bankruptcy Judge.

This case was commenced by the filing of a voluntary Chapter 7 petition. An interim trustee was appointed who entered upon the administration of the bankruptcy estate. A meeting of creditors pursuant to 11 U.S.C. § 341 was held.

Creditors filed several motions with which we here deal. The first motion filed was one to transfer the case to Columbus Ohio. This motion was filed by a group of creditors, and we will hereafter refer to movants in this motion as the Drummond group. They contend that venue was improperly laid at Cincinnati and should have been in Columbus. The second motion which was filed was by Evans Railcar Leasing Company (hereafter Evans). The relief sought in that motion was in the alternative a dismissal or a change of venue. The latter relief coincides with that sought in the first motion. The third motion was also filed by Evans and seeks permission from this court that state court appointed receivers be left in possession of debtor. The fourth motion was filed by the Drummond group and seeks dismissal of the bankruptcy case on grounds that the petition was filed in bad faith; that the individual responsible for filing the case had no authority to do so; and that a false affidavit was given in connection with improper venue setting.

All of these motions were set for hearing at the same time because they obviously deal with facts as to which there is a substantial overlap. A hearing was held at which time oral testimony was taken and documents received in evidence.

The following facts emerged at the hearing. A watershed date in this matter is June 14, 1982. On that date co-receivers were appointed by the state court in a suit instituted by the Ohio Department of Agriculture, to take over the affairs of the debtor. After that date the prior principal of the debtor, James Bobb, had virtually no contact with the business. Debtor's business had been the buying, selling, and brokering of grain. It had carried this on in Bloomingburg, in the Eastern Division of the Southern District of Ohio, and also at Winchester and Hamilton, both in the Western Division of the Southern District of Ohio. In connection with its business, debtor owned substantial real estate, all of which was sold on April 15, 1982, some four million dollars being involved in that sale. All of the assets of debtor consisting of personalty were sold on June 4th and 5th of 1982.

By the time the co-receivers assumed control of debtor there was virtually nothing left in the way of assets of the debtor other than money and choses in action. The proceeds of the sales of the assets of debtor were turned over to the co-receivers. Upon assuming control, the co-receivers assembled the books and records of the company in an office in Washington Court House, Ohio, in the Eastern Division of this District. The only business that the co-receivers conducted was the processing of claims of creditors and attempts to liquidate accounts receivable. Everything that the co-receivers did took place in Washington Court House. Creditors of debtor are farmers, located in a number of counties located in both the Eastern and Western Divisions of the Southern District of Ohio. The co-receivers have in their possession some $400,000.00 in cash which they are holding on debtor's account.

The co-receivers employed an attorney, Michael J. Lander, who instituted a suit on behalf of debtor against the individual principals of debtor, the Bobbs. That suit was prepared and about to come to trial at the time that this bankruptcy case was filed on April 29, 1983. In addition Lander, on behalf of debtor, carried on some litigation with the Fifth Third Bank which was on the verge of being settled at the time of bankruptcy. The interim trustee at the hearing stated that he had investigated the suit against the Bobbs, and if the bankruptcy case were to remain here he would ask Lander to carry on the litigation on behalf of the estate. During their tenure, the co-receivers never engaged in the grain business as it had been carried on by debtor prior to their accession. The co-receivers have received in compensation some $15,-000.00, and Lander has been paid for his services approximately $8,000.00. Prior to appointment of co-receivers, debtor was involved in the brokerage of grain, and had a trading account in Chicago with Garvey Grain. This account was closed out at about the beginning of June 1982.

The Bobbs had resided in Washington Court House during the time that they operated debtor. They sold their home there in October 1982 and moved to Hillsboro, in the Western Division in November 1982.

The record contains minutes of a special meeting of shareholders held April 21, 1983 which authorized the president of debtor to file a Chapter 7 bankruptcy case. In addition there is in the record minutes of a special meeting of the Board of Directors held April 21, 1983 which authorized the bankruptcy filing. The record also contains waivers of notice for both meetings.

The several motions before us are to some extent repetitive. We deem that the ensuing discussion deals with the matters therein which require our consideration.

1. Change of venue. Prior to the hearing on the motions involving this concern, it appeared that debtor's position that venue was properly laid in Cincinnati was based upon a contention that the debtor corporation was not engaged in business and had not been so engaged for some time prior to the filing, and therefore the only justifiable place to file a bankruptcy case was in the place of residence of the stockholders. In this case at the time of the filing the stockholders resided in Hillsboro, Ohio, a location for which it is appropriate to file in Cincinnati. This premise of debtor was at best shakey in view of the fact that co-receivers had been appointed by a state court to administer the affairs of debtor. Notwithstanding that the assets of debtor had been sold prior to that appointment and that the normal business which had theretofore been carried on by debtor, the buying and selling and brokering of grain, came to an end with the disposition of the assets, what might be regarded as business affairs of debtor were thereafter carried on by the co-receivers. These affairs were centered in Washington Court House, located in a county for which Columbus, Ohio is the proper venue.

■ At the hearing before us, however, a new consideration was introduced with respect to proper venue. That consideration turns on the application of 28 U.S.C. § 1472(2) to this case. There it is provided that venue is proper in the bankruptcy court:

(2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

"Such person" refers to the entity filing the bankruptcy case. There is pending in this Court a prior filed bankruptcy case where the debtor is Queen City Grain, Inc., an entity different from the one which filed this case. The term "affiliate" is defined in the Bankruptcy Code at 11 U.S.C. § 101(2)(B) as follows:

(2) "affiliate" means—

\*　　\*　　\*　　\*　　\*　　\*

(B) corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other

than an entity that holds such securities—

(i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or

(ii) solely to secure a debt, if such entity has not in fact exercised such power to vote;

\* \* \* \* \* \*

Subsequent to the hearing debtor filed an affidavit of Geneva M. Bobb in which she stated that she owns twenty-one and one-half percent (21.5%) of the outstanding common voting stock of Queen City Grain Company. She also states that she owns twenty-five percent (25%) of the common voting shares of Queen City Grain, Inc. Like information is also to be found in the schedules of the two bankruptcy cases. We find that the uncontroverted facts presented in the Geneva Bobb affidavit brings this case squarely within the definition appearing at 11 U.S.C. § 101(2) and conclude that this case for venue purposes was properly filed in Cincinnati.

■ In an effort to forestall this outcome, Evans urges that the case be transferred, as authorized by 28 U.S.C. § 1475, in the interest of justice and for the convenience of the parties. In support of this argument, Evans offered evidence that the creditors of debtor were located in the counties for which Columbus is the proper venue. There was, however, contrary evidence that debtor did business with farmers throughout the southern district of Ohio, and specifically within the counties for which Cincinnati is the proper venue. Accordingly, we decline to transfer the case because we do not believe that it will serve the convenience of all of the creditors, and the policy reasons behind our basic rationale as to venue, that having to do with affiliates, obliges us to retain the case here.

■ 2. Section 543(d). There are two motions which have been filed, one by Evans and one by the Drummond group, which seek to have this court allow the state court co-receivers to complete the administration of debtor's affairs. In effect, the purpose of these motions is to request that this court abstain from exercising its powers under the bankruptcy laws. In this regard movants rely upon 11 U.S.C. § 543(d). That provision is entitled "Turnover of property by a custodian," and the relevant statutory language is:

§ 543(d) The bankruptcy court may, after notice and a hearing, excuse compliance with subsection (a), (b), or (c) of this section, if the interests of creditors ... would be better served by permitting a custodian to continue in possession, custody, or control of such property.

There is no doubt that the co-receivers in the state court action are a "custodian" within the meaning of the bankruptcy laws. See 11 U.S.C. § 101(10).

In support of the motion, Evans points out that the present bankruptcy was filed April 29, 1983. The assets of the business had been sold, the real estate on April 15, 1982, and the personalty June 4, 1982. The co-receivers had been appointed by the state court in a suit initiated by the Ohio Department of Agriculture, on June 14, 1982. Evans says that since that time up to the present, the co-receivers have been in the process of providing for the distribution of the assets of the debtor. They had taken charge of the books and records of the debtor and evaluated the claims against the debtor. In February 1983 a partial distribution was made to the debtor's creditors. At the hearing, there was testimony that over $22,000.00 in expenses had been paid during the course of the receivership, these being payments to the receivers for their stewardship and to counsel for the receivers. There is a suit pending in the Common Pleas Court of Fayette County on behalf of debtor against its shareholders which is being pursued by the receivers. It is the position of Evans that virtually everything that requires administration in this case has been attended to during the receivership and essentially nothing remains other than the pursuit of the litigation against the shareholders. Evans argues that debtor for almost a full year did nothing during the pendency of the receivership. In view of all the foregoing circumstances, it is the posi-

tion of Evans that this court should abstain, and let the receivers in the state court conclude the administration of the debtor's affairs. Evans argues that creditors, who are generally small farmers, ought to be paid on their claims as promptly as possible, and unless this court abstains, the period of pendency of their claims before payment will be extended. It should be noted that there is a trustee who has been appointed in the bankruptcy case, and he has advised us that if he supersedes the co-receivers, he will continue to retain the services of the attorney who has been pressing the suit against the stockholders in the state court on behalf of the receivers.

In support of its position, Evans relies upon *In re Starbuck, Inc.*, 14 B.R. 134 (Bkrtcy.S.D.N.Y.1981). In that case the court had before it the question of whether it should, pursuant to 11 U.S.C. § 305, abstain from exercising jurisdiction. After considering the matter, the court dismissed the case. It did so because it found that the affairs of the putative debtor were in the hands of an S.E.C. receivership. The receiver had taken charge of the debtor's assets, retained counsel, and an accountant. The receiver had taken extensive steps in the administration of the receivership estate. In reaching the conclusion which it did, the court considered, consistent with the requirements of § 305, whether the interests of creditors and also the debtor would be better served by the dismissal. In evaluating that, the court said that "efficiency and economy of administration are primary considerations," and that administration of the case in bankruptcy "would result in a terrible waste of time and resources" in view of all that the S.E.C. receiver had already done. *Starbuck*, 14 B.R. at 135. (The cases cited by debtor, *In re Pine Lake Village Apartment Co.*, 16 B.R. 750 (Bkrtcy.S.D.N.Y.1982) and *In the Matter of Property Management & Investments, Inc.*, 17 B.R. 728 (Bkrtcy.M.D.Fla. 1982), are not here in point to offset the impact of *Starbuck*. Both those cases involve Chapter 11 cases and abstention under § 305. Obviously a dismissal by way of abstention would not be in the best interest

of a voluntary Chapter 11 debtor. Such cases are clearly distinguishable from the present.)

While *Starbuck* sounds highly relevant to the case before us, Evans invokes not § 305, but § 543(d). The test to be met under the latter statute is whether "the interests of creditors ... would be better served by permitting ... [the] custodian to continue in possession, custody, or control of such property." The intent of this provision is illuminated by the title of § 543. That title is "Turnover of property by a custodian". It is also significant that § 543, unlike § 305 makes no provision for dismissal of the case.

We have concluded that the invocation of § 543(d) is inappropriate here. The factors called to our attention by Evans relate not to possession of property, but rather to the administration of the affairs of the receivership. For us to apply § 543(d) while otherwise allowing the bankruptcy case to proceed, does not make a great deal of sense. Relief under § 543(d) would not confer upon the co-receivers the authority, for example, to pay claims to creditors or to conduct litigation on behalf of or in defense of debtor. Yet it is these very affairs of debtor which require attention.

We cannot here reach the same result as did the court in *Starbuck*, because the decision in *Starbuck* is based on § 305, and movants here have based their motions on § 543(d). We may not on our own motion inject § 305 into these proceedings or grant relief under that statute. The reason for this is one of due process. Abstention under § 305 requires a determination of the interests both of creditors and of *the debtor*, and debtor had no notice that it should present evidence as to why a dismissal would not be in its interest.

■ 3. Drummond group motion to dismiss. This motion states that it is based on three grounds. First, movant contends that the petition was filed in bad faith, the particular bad faith relied upon being the lapse of time between the beginning of the state court receivership and the filing of

bankruptcy, some eleven months. Movants show no authority to support their contention that this lapse of time amounts to bad faith, and we are unwilling to place such a construction upon. that time period. In *Muffler v. Petticrew Real Estate Co.* 132 F.2d 479 (6th Cir.1943) there were some six years between the appointment of a state court receiver and the bankruptcy filing, and the courts perceived no problem on this account. *Muffler* also disposes of the second ground advanced by these movants, that the officers of debtor were divested of power to file a bankruptcy petition because of the state court receivership. Finally, movant's third ground, that James Bobb gave a false affidavit and that this amounts to bad faith, we find on this record to be unsupported.

Accordingly, the motion to transfer the case filed by the Drummond group (Document # 7), the motion to dismiss or transfer filed by Evans (Document # 12), the Evans motion to permit the state court receiver to continue in possession (Document # 13), and the motion of the Drummond group to dismiss or remove this case to the state court (Document # 16), are all denied.

SO ORDERED.