**In re SAPPHIRE DEVELOPMENT, LLC, Appellant,**

v.

**Robert J. McKay, Appellee.**

**No. 3:13–cv–01680 (MPS).**

United States District Court,
D. Connecticut.

Signed Nov. 5, 2014.

David Y. Wolnerman, Randolph E. White, White & Wolnerman, PLLC, New York, NY, Ellery E. Plotkin, Law Offices of Ellery E. Plotkin, Stamford, CT, for Appellant.

James R. Fogarty, Fogarty, Cohen, Selby & Nemiroff, Greenwich, CT, for Appellee.

## RULING

MICHAEL P. SHEA, District Judge.

### I. Introduction

This is an appeal from the September 30, 2013 order of the United States Bankruptcy Court for the District of Connecticut, granting a motion by Appellee Robert McKay ("McKay") for the court to abstain from the Chapter 11 bankruptcy case of *In re Sapphire Development, LLC* (No. 13–

50043) under the abstention provision of 11 U.S.C. § 305(a)(1) ("Section 305(a)(1)"). Appellant Sapphire Development, LLC ("Sapphire") has asked this Court to reverse the bankruptcy court's order and reinstate its bankruptcy case.

McKay's involvement in the bankruptcy arises from a $3.96 million judgment entered in his favor by a New York state court in 1996. The judgment, based on a finding of fraud, was against Stuart Longman. Longman is the trustee of the Gayla Trust, which is the sole owner of Sapphire. McKay did not seek to enforce his judgment until September 2010, when he filed an action in Connecticut state court against Longman, Sapphire, several other entities allegedly controlled by Longman, and two banks holding mortgages on property owned by Sapphire, Hudson City Savings Bank and the Savings Bank of Danbury. *See McKay v. Longman et al.*, FST–CV10–6007056–S (Conn.Super. filed Oct. 15, 2010).

In state court, McKay sought to recover his judgment against Longman from Sapphire, by reaching Sapphire's sole asset, a 25.237–acre parcel of real property located at 424 West Mountain Road in Ridgefield, Connecticut ("the Property"). Sapphire has held the Property since 2007. But between 1985, when Longman acquired the Property, and 2007, the Property was transferred multiple times between several entities allegedly controlled by Longman and to and from Longman and his wife. Sapphire claims that this was done to facilitate various financing arrangements. McKay argues that this was done to hide Longman's assets. He advanced three theories in state court as to why he should be able to enforce his judgment against the Property in spite of the legal separation between Longman and Sapphire: a constructive trust should be placed on the Property; the transfer of the Property

from Longman to Sapphire was fraudulent; and he should be able to reverse-pierce the corporate veil to reach Sapphire's assets. The case was scheduled to begin trial on January 14, 2013.

Three days before trial, Sapphire voluntarily commenced this bankruptcy, and the state court action was stayed. Four days later, McKay filed a motion in bankruptcy court to dismiss the bankruptcy under 11 U.S.C. § 1112(b) ("Section 1112(b)") or, alternatively, for the court to abstain under Section 305(a)(1). On January 22, 2013, McKay moved to have the automatic stay lifted under 11 U.S.C. § 362(d)(1), (2), and (4) ("Section 362(d)"). On May 10, 2013, Sapphire filed its bankruptcy plan and disclosures. A hearing regarding the plan was held on May 14, 2013, at which point the bankruptcy plan was put on hold pending resolution of McKay's motions. On May 23, 2013, McKay filed an alternative motion for abstention under 28 U.S.C. § 1334 ("Section 1334"). The bankruptcy court held hearings on the abstention motions on June 19, June 20, and July 24, 2013. Longman and McKay both testified, as did a representative of Hudson City Savings Bank.

On September 30, 2013, the bankruptcy court granted McKay's motion for abstention under Section 305(a)(1). The court decided not to consider abstention under Section 1334, finding that Section 1334 only applies to "proceedings," or discrete components of bankruptcies, and therefore could not be the basis for abstaining from an entire bankruptcy "case." The bankruptcy court's ruling did not address dismissing the case under Section 1112(b) or lifting the stay under Section 362(d).

Sapphire has appealed the September 30, 2013 ruling, arguing that McKay lacked standing to move for abstention and that the bankruptcy abused its discretion in finding that abstention was warranted, and

asks this Court to reverse the ruling and reinstate the bankruptcy case. McKay challenges both of those arguments and asks this Court to affirm.

For the reasons that follow, the bankruptcy court's ruling is vacated, and the bankruptcy case is remanded for further proceedings. Contrary to Sapphire's contention, McKay did have standing to move for abstention, but the abstention order must nonetheless be vacated. While this Court shares the bankruptcy court's assessment of Sapphire's unsavory motives for commencing the bankruptcy, which could be a basis for dismissing the bankruptcy, lifting the automatic stay, or even imposing sanctions, Section 305(a)(1) is simply not the proper legal vehicle for addressing those concerns because of its plain limitation to the rare situation in which "the interests of creditors and the debtor would be better served by" abstention, which is not the case here.

## II. Standard of Review

■ "The decision to grant or deny a motion for abstention under § 305(a)(1) is reviewed by the district court for abuse of discretion." *In re Monitor Single Lift I, Ltd.,* 381 B.R. 455, 463 (Bankr.S.D.N.Y. 2008). A bankruptcy court abuses its discretion if its decision is based on an error of law or clearly erroneous factual findings, or "cannot be located within the range of permissible decisions." *Zervos v. Verizon New York, Inc.,* 252 F.3d 163, 169 (2d Cir.2001).

## III. Whether Appellee McKay Had Standing to Move for Abstention/Dismissal

Sapphire first argues that McKay lacked standing to bring the Section 305(a)(1) motion in bankruptcy court. Sapphire concedes that McKay had a "claim" within the meaning of the bankruptcy code, which is

essentially any "right to payment." Br. for Appellant 32 (citing 11 U.S.C. § 101(5)). But Sapphire maintains that McKay is not a "creditor," as that term is defined in 11 U.S.C. § 101(10), because McKay has refused to "assert" his claim. And, according to Sapphire, because McKay is not a "creditor," he does not meet the requirements for standing under 11 U.S.C. § 1109, which defines the "right to be heard" in Chapter 11 cases.

■ Both steps of Sapphire's analysis are flawed. The term "creditor" is not limited to those who have formally asserted their proof of claims in a bankruptcy case. 11 U.S.C.A. § 101(10)(A) (defining "creditor" as simply an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor"); *see also In re Stamford Color Photo, Inc.,* 105 B.R. 204, 207 (Bankr.D.Conn.1989) (rejecting the contention that "a creditor who claims that the petition was improperly filed and seeks its dismissal must timely file a proof of claim asserting a right to payment from the estate or lose standing to move under § 1112(b)").

■ And even if McKay were not considered a "creditor," 11 U.S.C. § 1109 would still grant standing to McKay as a "party in interest." 11 U.S.C. § 1109 (permitting "part[ies] in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee . . . [to] appear and be heard on *any issue* in a case under this chapter") (emphasis added); *In re MarketXT Holdings Corp.,* 347 B.R. 156, 160 n. 4 (Bankr.S.D.N.Y.2006) ("[T]here are, of course, grounds on which *parties in interest* may seek dismissal of any Chapter 11 case . . . including motions to dismiss or abstain pursuant to 11 U.S.C. §§ 1112 and 305(a).") (emphasis added). The list of

parties in interest provided in 11 U.S.C. § 1109 is merely illustrative and not exhaustive. *In re Teligent, Inc.,* 640 F.3d 53, 60 (2d Cir.2011). "Whether a party qualifies as a 'party in interest' is determined on a case-by-case basis, taking into consideration whether that party has a 'sufficient stake' in the outcome of that proceeding, which can include having a pecuniary interest directly affected by the bankruptcy proceeding." *In re Heating Oil Partners, LP,* 422 Fed.Appx. 15, 17 (2d Cir.2011). "[P]arty-in-interest standing . . . does not arise if a party seeks to assert some right that is purely derivative of another party's rights in the bankruptcy proceeding." *In re Refco Inc.,* 505 F.3d 109, 117 (2d Cir. 2007).

■ McKay meets the standing requirements of 11 U.S.C. § 1109 because of his financial stake in the outcome of the bankruptcy. Whether or not he filed a claim with the bankruptcy court and despite the fact that the claim was disputed, he is nonetheless alleging that property within the bankruptcy estate rightfully belongs to him, inasmuch as it is the property of Longman—of whom McKay is a judgment creditor—rather than the debtor (Sapphire). An outcome of the bankruptcy proceeding that distributed any part of the property or proceeds therefrom to Sapphire's other creditors would thus harm his interest. And that interest is not "purely derivative of another party's rights" merely because the fraudulent-transfer and reverse-veil-piercing theories, by their nature, would turn on Sapphire's connection to Longman. That scenario is distinguishable from *In re Teligent,* where a party was, "at most, a potential debtor of a debtor of the estate," and therefore not a party in interest. 640 F.3d at 55. Unlike a debtor of a debtor of an estate, a plaintiff is directly vindicating its own legal rights

when it sues an entity under the theories of liability that McKay has pursued.

■ It is important to note that the standing requirements of 11 U.S.C. § 1109 supplement rather than replace constitutional standing requirements. *Matter of James Wilson Assocs.,* 965 F.2d 160, 169 (7th Cir.1992); *In re Motors Liquidation Co.,* 430 B.R. 65, 92 (S.D.N.Y.2010). But where parties like McKay have a clear financial stake in the outcome of a bankruptcy proceeding, they also meet the constitutional requirements of an injury in fact that can be fairly traced to the challenged conduct and is redressible by a favorable decision from the court. *In re Global Indus. Technologies, Inc.,* 645 F.3d 201, 210–11 (3d Cir.2011) ("Article III standing and standing under the Bankruptcy Code are effectively coextensive."); *see also Matter of James Wilson Assocs.,* 965 F.2d at 169 ("Provided that the creditor has a stake in the issue . . . there could be no objection founded on Article III to such a grant of standing."). If Sapphire's bankruptcy had proceeded, McKay might have lost his ability to collect his judgment in state court, a tangible economic injury. And because the bankruptcy filing was the source of that imminent risk of financial injury, an order abstaining under Section 305(a)(1) would provide redress.

McKay therefore satisfied both constitutional and statutory requirements for standing to move that the bankruptcy court abstain from or dismiss the bankruptcy case.

## IV. Abstention Under 11 U.S.C. § 305(a)(1)

■ In its September 30, 2013 order, the bankruptcy court granted McKay's motion for abstention under Section 305(a)(1). The decision was based, as it must be, on a finding that abstention was in the interest of the creditors and the

debtor. That finding was clearly erroneous. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 168 (2d Cir.2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). Although the record contains evidence that *some* parties to the bankruptcy would benefit from abstention, the benefit to the *remaining* parties is asserted in the bankruptcy court's ruling in conclusory fashion without supporting evidence. This Court does not question the bankruptcy court's superior ability to weigh conflicting evidence bearing on this issue, but the record contains little to no evidence that those remaining parties would benefit from abstention—and certainly not enough evidence to overcome this Court's firm conviction, based on the entire record, that a mistake was made. Finally, to the extent that the bankruptcy court's decision to abstain was based on a finding as to Sapphire's motives in filing its bankruptcy petition, the decision was premised on an erroneous view of the law under Section 305(a)(1).

\* \* \*

The Court begins with the text of Section 305(a)(1), which provides:

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

(1) the interests *of creditors and the debtor* would be better served by such dismissal or suspension. . . .

11 U.S.C. § 305 (2014) (emphasis added). This language stands in contrast to the language of Section 1112(b), another provision of the Bankruptcy Code that permits a court to dismiss Chapter 11 cases in light of "the best interests *of creditors and the estate.*" *Id.* § 1112(b)(1) (emphasis added). Section 305(c) further provides that an order dismissing or suspending a case under Section(a)(1) is not appealable beyond the district court. *Id.* § 305(c).

The plain text of the Bankruptcy Code sheds light on two important aspects of Section 305(a)(1). First, abstaining under Section 305(a)(1) must be in the interest of the debtor, in addition to the creditors. *In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 462 (Bankr.S.D.N.Y.2008) ("[T]he interests of both the debtor and its creditors must be served by granting the requested relief."); *In re Schur Mgmt. Co., Ltd.*, 323 B.R. 123, 129 (Bankr. S.D.N.Y.2005) ("The test for suspension (as well as dismissal) is whether both the debtor and the creditors would be 'better served' by such action."); *In re Globo Comunicacoes e Participacoes S.A.*, 317 B.R. 235, 255 (S.D.N.Y.2004) ("This test requires that both creditors and debtors benefit from the dismissal, rather than applying a simple balancing test to determine whether dismissal is appropriate."); *In re 82 Milbar Blvd. Inc.*, 91 B.R. 213, 215 (Bankr.E.D.N.Y.1988) ("In addition to the creditors' interest it is necessary to prove that dismissal under § 305 would also be in the best interest of the debtor."); *see also In re Williams*, 305 B.R. 618, 621 (Bankr.D.Conn.2004) (considering the "prejudice to the Debtor" in whether to dismiss the case under Section 305(a)(1)); Alan N. Resnick & Henry J. Sommer, 2 *Collier on Bankruptcy* ¶ 305.01[1] (16th ed. 2012) ("Section 305 is reserved for those rare occasions when both the creditors generally and the debtor itself are better served by dismissal or suspension.")

Second, because it is unappealable beyond the district court, abstention under Section 305(a)(1) should be treated as an "extraordinary remedy," *In re Globo Co-*

*municacoes E Participacoes S.A.,* 317 B.R. at 255, and "should be used sparingly," *In re Pine Lake Vill. Apartment Co.,* 16 B.R. 750, 754 (Bankr.S.D.N.Y.1982). An early case interpreting the provision summarized these concerns well:

> To be sure, it could be said that dismissal would be in the interests of creditors and the debtor in many of the proceedings commenced under the Bankruptcy Code; this Court could dispose of much of its calendar if its discretion was unbridled. There is an inherent risk to our system of jurisprudence in any Act of Congress which gives the courts such broad powers to refuse jurisdiction over a case. This risk is compounded by the finality and non-appealability of an order entered under this section.... Congress has indicated that it intended section 305(a) dismissals to be the exception rather than the rule.

*Matter of Luftek, Inc.,* 6 B.R. 539, 548 (Bankr.E.D.N.Y.1980).

The limited legislative history of Section 305(a)(1) also supports a very narrow application of the provision. A House report describes, as an example of when abstention would be appropriate, a scenario in which "an arrangement is being worked out by creditors and the debtor out of court, there is no prejudice to the rights of creditors in that arrangement, and an involuntary case has been commenced by a few recalcitrant creditors to provide a basis for future threats to extract full payment." *Monitor Single Lift I, Ltd.,* 381 B.R. at 471 n. 5 (quoting H.R.Rep. No. 95–595, at 325 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6281); *see also 82 Milbar Blvd. Inc.,* 91 B.R. at 216 ("[L]egislative history shows that it was thought that less expensive arrangements may be practicable and best serve the interests involved in certain cases, but that this was viewed as the exception rather than the

rule."). It might be in everyone's interest for a court to abstain if "an out-of-court restructuring treats all creditors fairly and avoids the time and expense associated with bankruptcy litigation." *Globo Comunicacoes e Participacoes S.A.,* 317 B.R. at 256.

Here, the bankruptcy court found that "both the debtor and the creditors in this case will be better served by a comprehensive resolution of the Property issue and the other related issues raised in the State Court Action." September 30, 2013 Order, at 6. This conclusory statement of the bankruptcy court's factual findings is not supported by the evidence in the record. The record shows that, although abstention may well benefit certain parties to the bankruptcy, the overall impact on the debtor and some of the creditors would clearly be detrimental to their interests.

 First, this was a voluntary bankruptcy initiated by Sapphire. Bankruptcy provides the benefit of settling all of one's debts in a single, orderly process. Especially where the debtor itself has initiated the bankruptcy, terminating that process and forcing a debtor to settle its debts elsewhere will rarely be in the debtor's interest. *See Pine Lake Vill. Apartment Co.,* 16 B.R. at 753 ("It defies credulity to say that the debtor's interest would be better served by a dismissal when the debtor voluntarily sought the mechanics of Chapter 11 for the purpose of rehabilitation and a fresh start."); *82 Milbar Blvd. Inc.,* 91 B.R. at 215 ("Section 305 ... certainly will have limited applicability ... to voluntary cases.").

Second, the Sapphire bankruptcy involves more than just McKay and Sapphire; there are several other creditors whose interests must be considered. In its disclosures, Sapphire listed three bank mortgages, a Town of Ridgefield tax lien, and several small debts to unsecured cred-

itors, in addition to the disputed claim held by McKay. Schs. E, F, dkt. # 2, attachment # 9. As McKay himself concedes, proof of the Town of Ridgefield's secured claim (for more than $150,000) has been submitted to the bankruptcy court. Br. of Appellee 13. But neither the Town of Ridgefield nor the several smaller unsecured creditors are parties to the Connecticut state court lawsuit. *See McKay v. Longman et al.*, FST–CV10–6007056–S (Conn.Super. filed Oct. 15, 2010). At the very least, the absence of the Town of Ridgefield and the various unsecured creditors from the state lawsuit makes an abstention harmful to their interests. And although the three banks (Hudson City Savings Bank, JPMorgan Chase Bank, and the Savings Bank of Danbury) are parties to the state court lawsuit, the state court action is hardly an alternative insolvency forum. Hudson City Savings Bank, which opposed abstention, in particular could be harmed by the state court action. McKay's claims in state court, if successful, would invalidate Hudson's mortgage and deprive it of the privileged position that it would enjoy in bankruptcy court as a holder of the first mortgage. Br. of Appellee 14–15.

 This Court fully acknowledges that a bankruptcy court's decision to abstain under Section 305(a)(1) is a fact-intensive determination made on a case-by-case basis. *In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 464 (Bankr.S.D.N.Y. 2008). Over the years, bankruptcy courts have developed various lists of factors to aid in making the determination. *See id.* at 463. Several courts, including the bankruptcy court in this case, have relied on a seven-factor list, looking at:

(1) the economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought.

*Id.* at 464–65. A bankruptcy court may choose to give greater weight to some factors than others. *Id.* at 465.

 Furthermore, a case-by-case analysis may properly lead to the conclusion that abstention is in everyone's interest even in a voluntary bankruptcy. The mere fact that a debtor initiated a bankruptcy and originally felt that it was in its interest to be in bankruptcy court (or, for that matter, continues to feel that it should be in bankruptcy court), does not compel the bankruptcy court to reach the same conclusion.

But the Court has uncovered only two cases within this circuit in which a court abstained from a voluntary bankruptcy petition. And both cases presented specific facts, absent from the case at bar, that supported the court's conclusion that abstaining was in the debtor's interest despite the voluntary nature of the bankruptcy. *In re Duratech Indus., Inc.*, 241 B.R. 291 (Bankr.E.D.N.Y.1999) (suspending a voluntary bankruptcy under Section 305(a)(1) where the debtor had pending business tort litigation against a creditor and other third parties, which, if successful, would not only benefit the debtor but also all of the creditors of the estate enti-

tled to share in any recovery from the litigation), *aff'd,* 241 B.R. 283 (E.D.N.Y. 1999); *Matter of Fitzgerald Grp.,* 38 B.R. 16 (Bankr.S.D.N.Y.1983) (finding that partnership's bankruptcy petition should be dismissed under Section 305(a)(1) because the partnership had just been dissolved and would be forced to liquidate under New York's "winding up" laws, negating any potential value that might flow from sustaining an expensive Chapter 11 process).

 And the flexible seven-factor list laid out in *Monitor Single Lift I, Ltd.,* although helpful in ensuring a thorough case-by-case analysis, cannot be employed to reach a conclusion that is incompatible with the text of Section 305(a)(1), its narrow purpose, and its context within the larger Bankruptcy Code. Because an abstention order under Section 305(a)(1) is not appealable to the courts of appeals or the Supreme Court, there are no higher courts to ensure uniformity in judicial glosses on Section 305(a)(1). This makes it all the more important that any application of the statute be reconciled with a plain reading of the text requiring betterment of "the interests of creditors and the debtor."

Here, the bankruptcy court's analysis of the *Monitor Single Lift I, Ltd.* factors does not change this Court's conclusion that abstention was clearly not in the interest of both the creditors and the debtor. The bankruptcy court began by considering factors four ("Whether there is an alternative means of achieving an equitable distribution of assets.") and five ("Whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case."). *Id.* at 464–65. The bankruptcy court accorded little or no weight to factors four and five, saying that it would be premature to do so because

neither McKay's status as a creditor nor the Property's status as part of the bankruptcy estate had been determined. *Id.* at 465.

 While it is true that the validity of McKay's claims had not yet been judicially determined, the bankruptcy court did not explain why the bankruptcy court itself should not adjudicate these issues as part of the Chapter 11 process. The bankruptcy court has jurisdiction not only to judge a party's status as a creditor, but also to determine what property belongs to the estate, even if the latter determination turns (as it often does) on state law. *See, e.g., Tolkin v. Pergament,* No. 11 CV 3467 SJF, 2012 WL 1132475, at *4 (E.D.N.Y. Mar. 31, 2012); *In re Spiro,* 305 B.R. 142, 146 (Bankr.D.Conn.2004); *see also In re Morzella,* 171 B.R. 485, 489 n. 3 (Bankr. D.Conn.1994) ("After the property comes into the estate … the court will have jurisdiction to determine what property may be exempted and what remains as property of the estate.") (citation omitted); *In re Ratner,* 146 B.R. 211, 214–15 (Bankr. N.D.Ill.1992) ("[T]he bankruptcy court always has jurisdiction to determine what is, or is not, property of the bankruptcy estate.").

Nor did the bankruptcy court explain why it would nonetheless be "better [for] *all interests* in the case" to have those issues decided elsewhere. *Id.* at 465 (citing factor five) (emphasis added). Although the record supports the view that *some* parties to the case would have benefited from having those issues adjudicated in state court—because the state court action was ready to proceed to trial already—Sapphire, the Town of Ridgefield, and Hudson City Savings Bank all had much to gain by keeping those issues in bankruptcy court.

As to factor six ("Whether a non-federal insolvency has proceeded so far in those

proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process."), the bankruptcy court concluded that the factor was "not implicated here since there is no non-federal insolvency proceeding." *Id.* at 465. But rather than having a neutral impact on a court's decision whether to abstain, the absence of a non-federal insolvency proceeding should cut against abstaining.

Next the bankruptcy court considered factors one ("The economy and efficiency of administration."), two ("Whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court."), and three ("Whether federal proceedings are necessary to reach a just and equitable solution."), addressing them together. *Id.* at 464. The bankruptcy court again cited the fact that McKay's status as a creditor and the Property's status as part of the bankruptcy estate have not yet been determined, noting that a ruling in McKay's favor might mean that the estate would have no property left to administer. *Id.* at 5–6. But the bankruptcy court still provided no explanation why it would be better for *everyone* involved to litigate those issues in state court rather than federal bankruptcy court. And again, although permitting the state court action to proceed in state court might resolve *some* creditors' claims more quickly, the Town of Ridgefield's claim, as well as claims by the many smaller unsecured creditors, would not be addressed at all in state court.

Nor does this Court find the remainder of the bankruptcy court's discussion of factors one, two, and three to be convincing. The court noted that the state court action also names other "Longman Controlled Entities," and not just Sapphire, as defendants, which creates a "potential risk of inconsistent results" if the federal bankruptcy case proceeds. *Id.* at 6. But the automatic stay ensures that the bankruptcy poses no risk of "inconsistent results" as to claims by creditors against Sapphire or the assets in the estate, including the Property. *See* 11 U.S.C. § 362(a). It is Sapphire's creditors, and not the creditors of other "Longman Controlled Entities" that have no bankruptcy case before the court, whose interests the bankruptcy court should be concerned with on a Section 305(a)(1) motion. It does not matter that creditors with claims against *other* related debtors in state court might prefer to see all of the "Longman Controlled Entities" sued in one spot. Moreover, any potential risk that the bankruptcy court and state court might both decide a claim that had *not* been automatically stayed was absent here, as the *entire* state court case appears to have halted when the bankruptcy was initiated.

Finally, the bankruptcy court gave "considerable weight" to factor seven ("The purpose for which bankruptcy jurisdiction has been sought."), which the court framed as "whether this is a properly filed bankruptcy case." *Id.* The court found that Sapphire is "an artificial entity whose only purpose is to hold title to the Property, its only asset, which is not income producing," that each of Sapphire's unsecured debts identifies Longman as a co-debtor, and that Sapphire has no pending foreclosure actions arising from its secured debts. *Id.* at 6–7. The court found it doubtful that Sapphire "needs to reorganize" and doubted Sapphire's claim that the bankruptcy filing was designed to ensure a fresh start for Sapphire and equitable repayment to its creditors, given that Sapphire does not seem to be in a crisis with any of its debts. *Id.* at 7. Finally, the bankruptcy court concluded that Sapphire is using the bankruptcy filing to "lock McKay out of this court and the state court to avoid paying a judgment Longman owes to McKay." *Id.*

 Although the "purpose" for a bankruptcy may properly inform an analysis of the parties' interests, consideration of this factor must be distinguished from an inquiry into bad faith as a basis to dismiss a bankruptcy "for cause" under 11 U.S.C. § 1112(b).[1] While the bankruptcy court's view of Sapphire's motives is supported by the evidence, abstention under Section 305(a)(1) cannot be based solely or even primarily on a finding of bad faith—which is, in substance, what the bankruptcy court referred to in its analysis of factor seven. A contrary view would be incompatible with Section 305(a)(1)'s overriding concern for whether "the interests of creditors and the debtor would be better served by such dismissal or suspension." The statute creates no exception under which a bankruptcy court may disregard a party's interests in deciding whether to abstain whenever it finds that those interests belong to a party with unsavory motives. While consideration of bad faith may be relevant to an abstention decision in some cases, it must be consistent with the statute's text, and thus would support abstention only in a case in which the debtor's bad faith motives were at odds with its own interests.

Holding otherwise would also render Section 305(a)(1) redundant with Section 1112(b) (which contains no limitation on appealability), effectively providing the lower courts with an alternative, unappealable means of dismissing every bad-faith filing. See also In re Pine Lake Vill. Apartment Co., 16 B.R. 750, 754 (Bankr. S.D.N.Y.1982) (finding that Section 305(a)(1) should "not [be used] as a substitute for a motion to dismiss under Code

§ 1112(b)"); In re Costa Bonita Beach Resort Inc., 479 B.R. 14, 46 (Bankr.D.P.R. 2012) ("[P]arties who wish to seek dismissal of a case based primarily on the debtor's misconduct or bad faith should invoke, in most instances, the dismissal provisions contained in the relevant chapter under which the case was filed.") (citing Alan N. Resnick & Henry J. Sommer, 2 Collier on Bankruptcy ¶ 305.02[1] (16th ed. 2012)).

The Court therefore concludes that the bankruptcy court's decision to abstain under Section 305(a)(1) was based on a clearly erroneous assessment of whether "the interests of creditors and the debtor would be better served by such dismissal or suspension," as well as a finding as to Sapphire's motives that—while supported by the evidence—was applied to the question of Section 305(a)(1) abstention under an erroneous view of the law.

The Court stresses, however, that the bankruptcy court remains empowered to take further action on McKay's motion to dismiss and motion for relief from the automatic stay. Because the bankruptcy court did not grant or deny the relief requested in those motions, the issues are not properly before this Court on appeal. But the bankruptcy court's existing factual findings as to Sapphire's motives—which are supported by the evidence—are relevant to those motions and would likely support granting either the motion to dismiss or the motion for relief from the automatic stay.

 As noted, Sapphire's motives for filing for bankruptcy would, of course, be highly relevant to a finding of "cause" for

---

1. Although bad-faith filing is not explicitly addressed by Section 1112(b), a bad-faith filing is sufficient grounds for dismissal "for cause" under Section 1112(b). In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 985 (Bankr.N.D.N.Y.1988) ("The lack of good faith in filing and continuing a Chapter 11 constitutes 'cause' within the meaning of Code § 1112(b)."); Matter of 299 Jack–Hemp Associates, 20 B.R. 412, 413 (Bankr.S.D.N.Y. 1982).

dismissal. *See Matter of Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 228 (2d Cir. 1991) ("[A]n entity may not file a petition for reorganization which is solely designed to attack a judgment collaterally—the debtor must have some intention of reorganizing."). Alternatively, a finding of bad-faith filing may be grounds for relief from the automatic stay. *In re Eclair Bakery Ltd.*, 255 B.R. 121, 138 (Bankr. S.D.N.Y.2000) ("[T]he requirements for 'cause' for dismissal for bad faith filing, on the one hand, and for relief from the stay for bad faith filing, on the other, are not substantively different, and bad faith has frequently been held to provide sufficient cause to warrant both types of relief.").

 In addition, where the evidence of bad-faith filing is clear, a bankruptcy court may even impose monetary sanctions, including attorneys' fees, on the filer under Rule 9011 of the Federal Rules of Bankruptcy Procedure and other provisions. *See, e.g., In re Intercorp Int'l, Ltd.*, 309 B.R. 686, 692–93 (Bankr.S.D.N.Y.2004); *In re St. Stephen's 350 E. 116th St.*, 313 B.R. 161, 171 (Bankr.S.D.N.Y.2004). Given the strong evidence of Sapphire's bad-faith conduct, already addressed in hearings before the bankruptcy court, it may well be within the bankruptcy court's discretion to impose sanctions—but that issue is for the bankruptcy court to decide in the first instance. Such sanctions may be especially suited to a case in which a debtor is using the bankruptcy process, including the attendant appellate process, not primarily to reorganize and secure a "fresh start" but instead to stymie a single creditor—or a single creditor of another person for whom the debtor is serving as a shield.

Should the bankruptcy court, on remand, grant the motion to dismiss or the motion for relief from the automatic stay, and/or impose sanctions, any party appealing such ruling to this Court shall file a motion with the appeal indicating that, in the undersigned's view, such appeal is related to the present appeal and should be assigned to the undersigned judge.

**Conclusion**

For the foregoing reasons, the September 30, 2013 ruling of the bankruptcy court is VACATED, and the case is REMANDED for further proceedings.

**SO ORDERED.**