**696**

In the Matter of QUANTA RESOURCES CORP., a corporation of the State of Delaware, Debtor.

The STATE OF NEW YORK and the City of New York, Appellants,

v.

Thomas J. O'NEILL, Trustee in Bankruptcy of Quanta Resources Corp., Debtor, Appellee.

Bankruptcy No. 81–5967.
Civ. No. 82–3524.

United States District Court,
D. New Jersey.

Jan. 24, 1983.

See also 3rd Cir., 739 F.2d 927.

Nolan, Bell & Moore, William F. McEnroe, argued, Newark, N.J., for trustee Thomas J. O'Neill.

Robert Abrams, Atty. Gen., State of N.Y., Norman Spiegel, argued, New York City, Frederick A.O. Schwarz, Jr., Corp. Counsel, City of N.Y., Gary Tarnoff, argued, New York City, for appellants.

MEMORANDUM OPINION

LACEY, District Judge.

This matter is before the court on an appeal from the decision of the Bankruptcy Court which permitted the trustee to abandon property over objections by the City and State of New York.

Quanta Resources ("Quanta") filed a Voluntary Petition in Bankruptcy pursuant to Chapter XI of the Bankruptcy Code. These proceedings were converted to a Chapter VII liquidation, and a trustee was appointed.

The Trustee proposed sale or abandonment of property held by Quanta in Long Island City, New York. Notice was given by the Clerk of the Bankruptcy Court. In response to objections by purported lienholders, a judgment was entered establishing the validity of a lien in the amount of $344,464. No one appeared at the public auction. An offer to purchase the property which was approved by the court was subsequently withdrawn with court approval when the purchaser discovered that hazardous wastes were located at the site.

A second notice was given when the Trustee declared his intention to abandon the property as burdensome to the bankrupt estate. In response to this notice, the State and City of New York objected. They urged that the trustee not be permitted to abandon the property, and that whatever assets existed in the estate should be used to remove the toxic waste from the property. They contended abandonment of the property would violate federal, state and local laws concerning disposal of hazardous waste.

Over these objections, the court ruled that abandonment was permissible under section 554 of the Bankruptcy Code, 11 U.S.C. Sec. 554. The court ruled that the assets in the estate would be distributed to creditors and not be used for purposes of

removing the toxic waste. The State and City have since that time expended $2.5 million to remove the toxic waste. They appeal from the Order of the Bankruptcy Court permitting abandonment and seek to have the $2.5 million cost of the cleanup borne by the bankrupt estate.

Section 554(a) of the Bankruptcy Code provides:

> Sec. 554. Abandonment of property of the estate. (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value to the estate.

The parties cannot dispute that the property is burdensome to the estate. Irrespective of the cleanup costs, the liens on the property exceeded the estimated forced sale value of the property. Thus, the Trustee was otherwise justified, and by law was required, to seek to abandon the property.

The precise question here is whether abandonment must be denied under 11 U.S.C. Sec. 554 where the abandonment would violate public interest and/or federal, state and local laws. Cases cited by appellants have recognized that abandonment could be denied where the effect of abandonment would be to threaten the public health and safety and/or to violate federal law. See, e.g., *Ottenheimer v. Whitaker*, 198 F.2d 289 (4th Cir.1952); *In Re Lewis Jones, Inc.*, 1 B.C.D. 277 (Bk.Ct.E.D. Pa.1974).

In *Ottenheimer*, the court refused to permit the Trustee to abandon barges because the inevitable sinking of the abandoned barges would violate federal law forbidding the obstruction of navigable waterways. The court ordered that the assets of the bankrupt estate be used to remove the barges from the waterway before distribution of assets to creditors. In *Lewis Jones*, the court refused to permit abandonment of underground utility lines because the untended lines would pose a hazard to health and safety. The court ordered that assets of the estate be used to seal the lines and cement manhole covers before distribution to creditors.

Both *Ottenheimer* and *Lewis Jones* were decided before enactment of the Bankruptcy Reform Act of 1978. Therefore, there was no express statutory provision providing for the abandonment of burdensome property. The *Lewis Jones* court relied, in part, upon section 77(c)(6) of the former Bankruptcy Act, concerning reorganization of railroads, which allowed abandonment only where the public interest would not be harmed thereby. *Lewis Jones*, supra, 1 B.C.D. at 280. The *Ottenheimer* court expressed concern that permitting abandonment would subject the trustee or bankrupt to criminal penalties for having obstructed the waterways. *Ottenheimer*, supra, 198 F.2d at 290. As one commentator has remarked:

> If one of the purposes of the Bankruptcy Act is the rehabilitation of the debtor ... it seems inconsistent to expose him to a criminal proceeding. It may well be that the Trustee himself would be liable for the obstruction of the channel if the barges sink ... or that he would at least be subject to the penalty for aiding and abetting a violation of the statute by turning the barges over to the bankrupt knowing that they cannot be cared for properly. It would indeed be anamolous for one court to order its officer to do what another could punish as a misdemeanor.

Note, 66 Harv.L.Rev. 921, 922 (1953).

■ Although the question is a close one, this court concludes the ruling of the Bankruptcy Court must be affirmed. First, both *Ottenheimer* and *Lewis Jones* acknowledged that the rules concerning abandonment were judge-made rules which should yield to federal statues and the general public interest. See, *Ottenheimer*, supra, 198 F.2d at 290; *Lewis Jones*, supra, 1 B.C.D. at 280. As the court wrote in *Ottenheimer*:

> It seems obvious to us that a rule which is not provided by statute but built up by court decisions to facilitate the administration and distribution of assets of a bankrupt estate should not be extended so as to reach such an unreasonable and

unjust result. The judge-made must give way when it comes into conflict with a statute enacted to ensure the safety of navigation.

Id. at 290.

By contrast, section 554 of the Bankruptcy Code, 11 U.S.C. Sec. 554, constitutes an express statutory provision for the abandonment of burdensome property. Nowhere is the power to abandon conditioned upon a finding that abandonment does not harm the public interest or violate any statutes. If Congress had intended to place this limitation on the power to abandon, it could have easily done so. Furthermore, as the *Lewis Jones* court recognized:

The Supreme Court, in the case of *Securities and Exchange Commission vs. United States Realty and Improvement Company*, 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293, said that "a bankruptcy court is a court of equity and is guided by equitable doctrines and principles, except as they are inconsistent with the Act...."

*Lewis Jones*, supra, 1 B.C.D. at 280 (emphasis added). Here, for the Bankruptcy Court to have granted the equitable relief requested and to have compelled that the assets of the bankrupt estate be used to remove the toxic waste would have been inconsistent with section 554 of the Act.

The Bankruptcy Court here ruled:

The City and State are in a better position in every respect than either the trusteee or debtor's creditors to do what needs to be done to protect the public against the dangers posed by the PCB-contaminated facility. But it is not the estate or the debtor's creditors who should finance the requisite cleanup, given the decision of the Trustee to abandon the property.

Transcript of June 22, 1982 Proceedings at 6. The City and the State have failed to demonstrate why the Bankruptcy Court was wrong in deciding that the creditors should not have to pay for the cleanup. The creditors are not more responsible for the toxic conditions than the general public. And herein lies another problem with compelling that the assets of the estate be used to finance the cleanup.

As noted by the appellants and the Lewis Jones court, abandonment of railroad lines pursuant to the former Act was subject to the requirement that abandonment not violate the public interest. See 11 U.S.C. Sec. 1170(a). However, the legislative history to section 1170 includes the following:

Subsection (a) permits the court to authorize the abandonment of a railroad line if the abandonment is consistent with the public interest and either in the best interest of the estate or essential to the formulation of a plan ... The authority to abandon or not to abandon lines of railroad is, of course, subject to the Fifth Amendment to the Constitution, which may in particular cases require abandonment in order not to erode a secured creditor's interest in the debtor's property even though the public interest dictates otherwise.

House Rep. No. 85–595, 95th Cong., 1st Sess. at 423 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6379. This concern was also voiced in *In Re New York, New Haven and Hartford Railroad Co.*, 330 F.Supp. 131, 147 (D.Conn.1971) where the court wrote:

The public interest cannot demand the erosion of the bankrupt's assets to the point of confiscating practically the entire asset. At some point, the extent and degree of taking runs into the constitutional prohibition to the Fifth Amendment, the taking of private property for a public use without just compensation.

Here, there is a serious question whether requiring that the estate's assets be used to pay for the cleanup—which would leave nothing for secured creditors—would constitute a taking without just compensation.

Finally, as noted by the Bankruptcy Court, Transcript, supra, at 7, to have refused to permit abandonment would have been "an exercise in futility." Abandonment of the property causes title to vest in the bankrupt who, concededly, does not have sufficient assets to pay for the cleanup. Refusing to permit abandonment

would cause the title to remain in the Trustee. But the State and City do not dispute that the Trustee did not, does not, and never will have sufficient assets to finance the cleanup. The Bankruptcy Court expressly weighed this factor in its consideration of the public interest. Id. The court correctly concluded that the public interest would be best served by an expeditious cleanup and that permitting abandonment would result in a quicker cleanup than requiring the Trustee to retain title.

Appellant argued that section 959(b) of the United States Judicial Code, 28 U.S.C. Sec. 959(b), proscribes abandonment. Section 959(b) provides that the Trustee shall "manage and operate" property in his possession according to valid laws. However, appellants are unable to cite a case which applied this requirement in a Chapter VII context. According to Professor Moore:

> Sec. 959(b) applies only to the Receiver in his operation of property in his possession. It does not apply to the distribution of the estate, and does not require the Federal Receivership Court to comply with state laws regulating distribution of funds in the receivership.

2 Moore's Federal Practice Sec. 66.04(4). For instance, in *State of Mo. v. U.S. Bankruptcy Court*, 647 F.2d 768, 778 (8th Cir. 1981), the court remarked that a Trustee would not be required to obtain a state license necessary to operate grain warehousing if the Trustee wished to sell grain pursuant to a liquidation of the estate. I find that section 959(b) does not apply to abandonment in a Chapter VII proceeding.

Similarly, the attempted analogy to exception from the automatic stay provisions in cases involving enforcement of state police powers, 11 U.S.C. Sec. 362, is unpersuasive. This is because section 554 does not provide a similar exception to abandonment where the state is seeking to enforce police powers. Furthermore, section 362(a) expressly provides that the exception shall not apply where the governmental unit is prusuing a claim against the property of the debtor. Therefore, reliance on section 362 actually undercuts appellant's argument, inasmuch as the City and State are pursuing a claim against the debtor's property.

The decision of the Bankruptcy Court is affirmed.