**In re CATAMOUNT DYERS, INC., Debtor.**

**Bankruptcy No. 82–00160.**

United States Bankruptcy Court, D. Vermont.

July 12, 1985.

David D. Robinson, Rutland, Vt., trustee, pro se.

Merideth Wright, Asst. Atty. Gen., Montpelier, Vt., for State of Vermont, Agency of Environmental Conservation.

James J. Cormier, Jr., Rutland, Vt., for Bennington County Industrial Development Corp.

William C. Dagger, Rutland, Vt., for Vermont Industrial Development Authority.

John R. Canney, III, Rutland, Vt., for Dorothy Smith.

## MEMORANDUM OPINION

CHARLES J. MARRO, Bankruptcy Judge.

This is another of the increasing number of cases which square off a trustee of the estate of the debtor seeking to abandon assets against a state environmental agency attempting to enforce an order for the removal of hazardous waste material from the site of premises on which the debtor conducted its business.

After liquidating most of the physical assets of the Debtor, the Trustee did on January 29, 1985 file a Notice of his Intent, pursuant to § 554(a) of the Bankruptcy Code, to Abandon all of the chemicals and containers set forth in a list attached to the notice. The State of Vermont objected to

the Trustee's intent to abandon this property on the grounds that the chemicals constituted hazardous waste under Vermont law, 10 V.S.A. chapter 159 and the regulations adopted thereunder, and must be disposed of pursuant to such law to avoid a hazard to the health and the environment. Likewise, Bennington County Industrial Development Corporation filed an Objection to the Trustee's Intent to Abandon this property on the grounds that such an abandonment was in direct contravention of an Order issued to the Trustee by the State of Vermont, Agency of Environmental Conservation with respect to this personal property on December 13, 1984, and, in addition, the abandonment would be prejudicial to the rights of Bennington County Industrial Development Corporation.

At a scheduled hearing on April 10, 1985 the parties in interest represented to the Court that it would not be necessary that testimony be taken for the reason that the parties contemplated the filing of a stipulation of facts to be followed by the filing of memoranda of law upon which the Court could make a determination of the issue involved in the Trustee's Intent to Abandon. A Stipulation was subsequently submitted to the Court, but it was not signed by all of the parties. Yet, they desired that the Court make a decision in the matter, and the Court is willing to accommodate based on the records in this case.

## FACTS

Catamount Dyers, Inc., the Debtor, engaged in the business of dyeing and finishing textile products, filed a Petition for Relief under Chapter 11 of the Bankruptcy Code on July 8, 1982, and the proceeding was converted to a Chapter 7 liquidation on March 13, 1984 with David D. Robinson, Esquire, appointed as interim trustee, and he is still the duly qualified and acting trustee.

The property upon which the Debtor conducted its business was leased from Bennington County Industrial Corporation, the holder of the legal title of the property.

The Trustee sold almost all of the physical assets of the Debtor and the Court approved the sale by Order entered November 21, 1984. In an Affidavit executed by the Trustee and filed on April 10, 1985, the Trustee averred that the remaining assets consisting of various barrels and containers of miscellaneous chemicals, dyes and other materials were not offered for sale at auction due to the threats and demands of the State of Vermont Environmental Protection Agency by and through its agent; that no person or entity known to the Trustee was interested in purchasing, for any amount, these items; that some or all of the containers and or of the contents of the containers constitute hazardous waste and that the disposal of these items would require an expenditure of a great amount of time and effort with no consequential benefit to the estate.

On December 13, 1984 the Commissioner of the Department of Water Resources and Environmental Engineering Agency of Environmental Conservation for the State of Vermont in exercise of his authority under 10 V.S.A. § 6610a made certain Findings relative to the hazardous waste materials of the Debtor including one that legal title of the property leased by Catamount Dyers was held by Bennington County Industrial Development Corporation and that Vermont Industrial Development Authority held equitable title by virtue of a loan made to the Debtor by Merchants Bank and guaranteed by Vermont Industrial Development Authority. He then proceeded to issue the following Order:

"1. Within sixty (60) days of the receipt of this order, BCIC and VIDA shall prepare and submit a closure plan for cleaning and decontamination of the site to the Agency.

"2. Within thirty (30) days of Agency approval of the submitted closure plan, BCIC and VIDA shall initiate the procedures for clean-up and decontamination described in the approved closure plan.

"3. All wastes generated by the cleaning/decontamination activities shall be:

"a. Transported by a certified hazardous waste transporter;

"b. Accompanied by a hazardous waste manifest, prepared in accordance with Regulation 6610; and

"c. Treated and/or disposed of at a certified hazardous waste facility."

On December 13, 1984 the same commissioner likewise acting under 10 V.S.A. § 6610a issued the following Order directed to David D. Robinson, Esquire, Trustee, viz:

"1. Within sixty (60) days of the date of this order, the Trustee shall remove all waste materials listed in Appendix A which are located in and around the former Catamount Dyers building. All waste materials which are removed shall be:

"a. Transported by a certified hazardous waste transporter;

"b. Accompanied by a hazardous waste manifest, prepared in accordance with Regulation 6610; and

"c. Treated and/or disposed of at a certified waste facility."

The Small Business Administration claimed a perfected security interest in most of the personal property of the Debtor which was taken into the possession of the Trustee. In an adversary proceeding the Trustee filed a Complaint against the Small Business Administration to determine the validity of its security interest and also to determine the security interest of Clark Equipment Credit Corporation in certain personal property. In a Memorandum Opinion entered by the Court on April 23, 1985, the Court determined that Small Business Administration and Clark Equipment Credit Corporation held valid security interests in all of the personal property acquired by the Trustee. Judgment was entered declaring these security interests valid and, as a result, all of the funds now held by the Trustee other than administrative fees and expenses are subject to these security interests and there will be no money held by the Trustee which shall inure to the benefit of the unsecured creditors.

Small Business Administration has informed the Court that it takes the position that by virtue of its perfected security interest it is claiming all of the cash proceeds from the sale of the assets and that it takes no position as to the Trustee's Motion to Abandon the chemicals and contents set forth in a list attached to the notice of the trustee to abandon.

As conceded by the Small Business Administration, before distribution of the proceeds received by the Trustee is made, administration fees and expenses may be deducted.

The property which the Trustee is seeking to abandon has no realizable value to the estate of the Debtor. Bennington County Industrial Development Corporation permitted the Trustee to store the personal property of the estate on its premises until the liquidation of the Debtor's estate was completed.

### DISCUSSION

Under 11 U.S.C. § 554(a) the trustee, after notice and hearing, may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate. The trustee, in this case, has clearly brought himself within the purview of this statute since it has been established that the property has no realizable value or benefit to the estate. Nevertheless, both the State Agency and Bennington County Industrial Corporation contend that the Trustee may not abandon property in contravention of state environmental laws. Specifically, they refer to 10 V.S.A. Chapter 159 under which the state may through the secretary of the agency of environmental conservation or his duly authorized representative issue appropriate orders for the removal of hazardous waste. See § 6610a. It was pursuant to this statute that the aforesaid orders of December 13, 1984 were issued to BCIC and VIDA as well as to the Trustee.

In resisting abandonment both the State and BCIC maintain that the Trustee must comply with the State's order for removal of the hazardous waste. They

rely heavily on *In the Matter of Quanta Resources Corp.* (3d Cir. CCA 1984) 739 F.2d 912 which is directly in point. In *Quanta Resources* the Court, in a split decision, held that the Bankruptcy Reform Act did not permit abandonment of property by a bankruptcy estate, a waste oil processing and storage facility, in contravention of state and local environmental protection laws. The majority reasoned that § 554 itself refers only to the trustee's affirmative power to abandon and that it does not of itself preempt state police power regulations. Even so, the Court said that Congress did not intend the bankruptcy scheme generally to abrogate the enforcement of state police power regulations as evidenced by:

First, the express exception to the automatic stay otherwise imposed on all actions against the debtor, 11 U.S.C. § 362(a), for "the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." Id. § 362(b)(4).

Second, the indication that the bankruptcy scheme is not intended to abrogate state laws is found in 28 U.S.C. § 959(b) (1982):

"(b) Except as provided in section 1166, a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof."

The majority in *Quanta* rejects the trustee's argument that section 959(b) is inapplicable outside a Chapter 11 proceeding where the trustee is managing the debtor's business. It said at page 919:

"Even in a Chapter 7 proceeding, however, the trustee may be authorized to operate a business. Id. § 721. Thus there is no reason to suppose Section 959(b) inapplicable in Chapter 7."

This Court does not agree with the reasoning of the majority in *Quanta*. It fails to see how there is any relationship between § 554 of the Code and the exception spelled out under § 362(b)(4) which permits a governmental unit to ignore the automatic stay and enforce its police and regulatory power.

There is no Legislative History spelled out under § 554 and its language is clear and unequivocal. It permits a trustee to abandon burdensome property to the estate or property which has an inconsequential value to the estate. In the instant case, there is no dispute that the hazardous waste materials have no realizable value to the estate of the Debtor. Environmental and hazardous waste problems were in existence long before the Bankruptcy Reform Act of 1978 known as the Bankruptcy Code was enacted and Congress was necessarily aware of them. Such being the case, it could have very well carved an exception to § 554 prohibiting abandonment of property constituting hazardous waste unless the trustee bore the expense of removing it.

Likewise, § 959(b) is not apposite. It applies specifically to a trustee who is managing and operating the property in his possession as trustee. The words "manage" and "operate" in the statute indicate affirmative action. To manage means "to direct or carry on business or affairs" and to operate means "to perform a function; to produce an appropriate effect." See Websters New Collegiate Dictionary.

Even though a trustee may be authorized to conduct a business as indicated by the majority in the instant case, the trustee's only function was to liquidate the assets, and for that reason § 959(b) has no application to him.

This Court prefers to follow the minority in the *Quanta* case and is impressed with the rationale of dissenting Circuit Judge Gibbons. See 739 F.2d 924–927. As late as May 9, 1985, a Bankruptcy Court rejected the majority and followed the dissent in the *Quanta* case. See *In Re Union Scrap*

*Iron & Metal Company* (Bankr.D.Minn. 1985) 49 B.R. 477, 13 B.C.D. 29. The reasoning of Bankruptcy Judge Kressel is aptly expressed as follows:

"The MPCA relies upon the case of *City of New York v. Quanta Resources Corp.* (*In re Quanta Resources Corp.*) 739 F.2d 912 [12 BCD 175] (3rd Cir.1984) for its position. There is little doubt that Quanta Resources supports the MPCA's position. The problem is that the majority opinion in *Quanta Resources* was attempting to graft its view or proper public policy onto the Bankruptcy Code. It may well be that the majority's opinion is good public policy. Unfortunately it is not the policy adopted by Congress in enacting § 554. Rather, I agree with the dissent in *Quanta Resources* that

'there is no legislative history suggesting that we may alter or amend [Section 554(a)]. The intent is clear. The record here establishes that the property is burdensome and of inconsequential value to the estate.... Thus, under federal law, the trustee may abandon the property.'

*City of New York v. Quanta Resources Corp.* (*In re Quanta Resources Corp.*), 739 F.2d 912, 923 (3rd Cir.1984), Rev. granted, [—— U.S. ——, 105 S.Ct. 1168, 84 L.Ed.2d 319] (1985). Thus I feel compelled to follow the statute enacted by Congress rather than the Third Circuit's opinion in *Quanta Resources.*"

The United States Supreme Court has agreed to review the Quanta case. In this respect, it is noted that it has already held that a clean-up order for hazardous waste is actually converted into an obligation to pay money which is dischargeable in bankruptcy. *Ohio v. Kovacs*, (1985) —— U.S. ——, 105 S.Ct. 705, 83 L.Ed.2d 649. What is significant in Kovacs is that the Supreme Court indicated in its dicta, footnote 12, that after notice and hearing the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value to the estate and went on to say:

"... If the property was worth more than the costs of bringing it into compliance with state law, the trustee would undoubtedly sell it for its net value, and the buyer would clean up the property, in which event whatever obligation Kovacs might have had to clean up the property would have been satisfied. If the property were worth less than the cost of cleanup, the trustee would likely abandon it to its prior owner, who would have to comply with the state environmental law to the extent of his or its ability."

Although not determinative, the foregoing language may be indicative of the decision which may be made by the Supreme Court in reviewing *Quanta*.

■ In any event, this Court considers that the Trustee should be permitted to abandon. In reaching this result, the Court also observes that it is safe to assume that the hazardous waste condition has existed for sometime and it was not until after the Trustee had sold most of the assets that the State Agency issued its order requiring removal by the Trustee. It also notes that a similar order was directed to Bennington County Industrial Corporation and Vermont Industrial Development Authority on the same date; that the Trustee does not have and will not have, in view of the perfected security interest of Small Business Administration, any funds with which to pay the costs of removal and that the State is still in a position to require Bennington County Industrial Corporation and Vermont Industrial Development Authority to comply with the order.

■ The State also contends that it is entitled to priority for the cost of removal of the hazardous waste as an administrative expense. As of now, it has not filed a claim and has not established the amount thereof and whether it is an administrative claim in the Chapter 11 proceeding or in the Chapter 7 liquidation. Until this is done the Court is in no position to make a determination as to whether the State should be allowed the expense of cleanup as an administrative expense.

The Clerk is instructed to enter Judgment in accordance with this Memorandum Opinion.