**In re BRIO REFINING, INC., Debtor.**

Civ. A. No. 3–86–2891–G.

Bankruptcy No. 382–01532–M–7.

United States District Court,
N.D. Texas,
Dallas Division.

May 25, 1988.

Henry W. Simon, Jr., Robert M. Doby, Mark J. Petrocchi, Simon Anisman Doby Wilson & Skillern, Fort Worth, Tex., for American Hoescht et al.

J. Maxwell Tucker, Winstead, McGuire, Sechrest & Minick, Dallas, Tex., for MBank Abilene, N.A.

## MEMORANDUM ORDER

FISH, District Judge.

This case is before the court on appeal from the bankruptcy court's order of November 7, 1986 denying the appellants' application for payment of administrative expenses. After review of the bankruptcy court record, the briefs of the parties, and the applicable statutes and cases, the court concludes that the bankruptcy court's decision must be affirmed.

### I. *Background*

This appeal was filed by the Potentially Responsible Parties ("PRP"),[1] who argue that the bankruptcy court erred in allowing the debtor's property to be abandoned and in not later reclaiming it as part of the estate. The record reflects that between 1978 and 1982, the debtor, Brio Refining, Inc. ("the debtor"), owned and operated an industrial facility located in Friendswood, Texas ("the subject property"). On November 17, 1982, the debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Act, case number 382–01532–M–11. The debtor filed an application to convert the case to Chapter 7 on January 17, 1983. The application for conversion was granted on February 11, 1983, and a trustee was appointed.

On April 1, 1983, the trustee filed an Application for Authority to Compromise Controversies. The application provided in part that the trustee would, if the court approved, abandon the subject property and the automatic stay imposed under § 362 of the bankruptcy code would be terminated as to that property. The bankruptcy court approved the Application to Compromise Controversies on August 30, 1983, as a result of which the subject property was abandoned.

During October of 1984, the United States Environmental Protection Agency ("EPA") proposed adding the subject property to the National Priorities List, a prioritized listing of releases or threatened releases of hazardous substances into the environment. The PRPs are entities that may have incurred liability on the subject property under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9601 *et seq.*

In maintaining the subject property, the PRPs incurred various expenses estimated at slightly less than $900,000. Furthermore, on May 10, 1985, the PRPs entered into an administrative consent order obligating them to undertake a remedial investigation and feasibility study of the subject property. The PRPs estimate that the cost of the study will exceed 1.5 million dollars. The PRPs further assert that if results of the investigation are unfavorable, they could be subjected to further expenditures of money and could also be required either to remedy the environmental problems associated with the property or to dispose of the property.

On January 3, 1986, the PRPs filed an Application for Payment of Administrative Expense and Other Relief. MBank Abilene, N.A. filed an objection and later a motion to dismiss or, alternatively, for summary judgment.

A hearing on MBank's motion was held on September 19, 1986. On November 3, 1986, the bankruptcy court entered its memorandum opinion granting MBank's motion for summary judgment and denying the PRPs' motion for administrative expenses. The bankruptcy court reasoned that "the [subject property] was not part of

---

1. American Hoechst; Amoco Chemicals Corporation; Atlantic Richfield Company; Borg-Warner Chemicals; Browning Ferris, Inc.; Fina Oil & Chemical Company; Cosmar; The Dow Chemical Company; Goodyear Tire and Rubber Company; Gulf Oil Corporation; Monsanto Company; Shell Oil Company; and Union Carbide Corporation.

the debtor's estate at the time that the [PRPs] expended the monies that they seek as an administrative expense." Memorandum Opinion (November 3, 1986) at 2. Subsequently, the PRPs brought this appeal, in which they raise two arguments.

## II. *Analysis*

### A. *Power to Authorize Abandonment*

■ The PRPs first argue that because the subject property is environmentally hazardous, the bankruptcy court lacked jurisdiction to abandon it. The power of the bankruptcy court to abandon property is found in 11 U.S.C. § 554(a), which provides:

(a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

The PRPs do not argue that the bankruptcy court failed to provide adequate notice and a hearing, nor do they argue that the property was not burdensome to the estate. Instead, relying on *Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), they contend that environmentally hazardous property cannot be abandoned by a bankruptcy court. A careful reading of *Midlantic* demonstrates, however, that it is not controlling in this case.

The majority in *Midlantic*, a 5–4 decision, concluded that a bankruptcy court lacked power to authorize abandonment of property where such abandonment was "in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from *identified* hazards," unless the bankruptcy court formulated "conditions that will adequately protect the public's health and safety." *Id.* 106 S.Ct. at 762 (emphasis added). The holding of *Midatlantic*, therefore, is that abandonment under 11 U.S.C. § 554 is not precluded unless the hazard relating to the property is identified and the abandonment

directly contravenes a state or federal law designed to protect the public health or safety. *See also Matter of Commonwealth Oil Refining Co., Inc.*, 805 F.2d 1175, 1185 (5th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 3228, 97 L.Ed.2d 734 (1987).

MBank argues that *Midlantic* is inapplicable in this case because the hazardous nature of the subject property was not known until after abandonment and because the abandonment did not contravene any federal or state laws designed to protect the environment. The court agrees.

The record reflects that the subject property was abandoned on August 30, 1983. There is no indication that the hazardous nature of the property was known at that time. On the contrary, the record shows that the hazardous nature of the property was not detected until October of 1984, i.e., more than a year after the abandonment was effected. Thus, there is no evidence that the hazard was identified prior to abandonment.[2]

Without reaching the question of whether the subject property is now in violation of any state or federal laws, the court concludes that the record is devoid of any evidence tending to show that, before abandonment, the property presented an "imminent and identifiable" risk of harm to the public. Because the property was not known to be potentially hazardous at the time of abandonment, this case is factually distinguishable from *Midlantic*. The court therefore concludes that the bankruptcy court had jurisdiction to authorize the abandonment.

### B. *Abandonment Before Intervention of Third Party Rights*

■ The second issue raised by the PRPs is whether the abandonment of the property should be deemed ineffective because it occurred before the intervention of third party rights. Specifically, the PRPs

---

**2.** The majority in *Midlantic* explained that the exception to the abandonment power ... is a narrow one. It does not encompass a speculative or indeterminate future violation of such laws that may stem from abandonment.

The abandonment power is not to be fettered by laws or regulations not reasonably calculated to protect the public health or safety from imminent and identifiable harm. *Id.* 106 S.Ct. at 762–63 n. 9.

argue that the abandoned property became reinvested in the debtor, which is an empty shell corporation, and because third party rights have since arisen, the abandonment was never fully effective.

In denying the PRPs application for administrative expenses, the bankruptcy court, reasoned that

> [o]nce the abandonment is final, the abandonment is irrevocable.... This Court finds that the PRPs have not incurred "actual, necessary costs and expenses of preserving the estate," as the [subject property] was no longer property of the debtor's estate.

Memorandum Opinion (November 3, 1986) at 2. Case law strongly supports the bankruptcy court's conclusion that the trustee's decision to abandon property is irrevocable, absent a few narrowly tailored exceptions.[3] *See, e.g., In re Polumbo*, 271 F.Supp. 640, 643 (W.D.Va.1967).

The PRPs rely on these narrowly drawn exceptions to the irrevocability of the abandonment power. The exceptions cited by the PRPs, however, all involved situations where property was concealed from the trustee or where the debtor failed to schedule the property, thereby denying the trustee knowledge of the property's existence. Quite clearly, these exceptions are not applicable here, for the trustee was fully aware of the subject property's existence. The court concludes that the limited exceptions to the irrevocability of abandonment under 11 U.S.C. § 554 are inapposite.

### III. *Conclusion*

For the foregoing reasons, the decision of the bankruptcy court is AFFIRMED.[4]

SO ORDERED.

---

**3.** Although the *Midlantic* decision now poses another exception, that exception only arises, as noted above, when the hazardous nature of the property is known prior to the abandonment.

**4.** MBank has further filed a motion for sanctions. After reviewing the cases and statutes relevant to the court's opinion herein, the court concludes that sanctions are not warranted. Accordingly, MBank's motion for sanctions is denied.