In re 82 MILBAR BOULEVARD INC., Debtor.

Bankruptcy No. 887–71879.

United States Bankruptcy Court, E.D. New York, at Westbury.

Sept. 29, 1988.

D'Amato & D'Amato, New Hyde Park, N.Y., for debtor.

Andrew J. Maloney, U.S. Atty., E.D. N.Y., Brooklyn by William H. Beckerleg, Jr., Sp. Asst. U.S. Atty., for U.S.

Marilyn Frier, Woodmere, N.Y., Trustee.

John A. Esposito, Asst. U.S. trustee, Garden City, N.Y.

## MEMORANDUM DECISION AND CONDITIONAL ORDER DIRECTING CONVEYANCE OF POSSESSORY INTEREST

ROBERT J. HALL, Bankruptcy Judge.

This matter came to be heard upon the motion of the Trustee, Marilyn Frier, to dismiss the debtor's voluntary Chapter 7 petition pursuant to 11 U.S.C. § 305 or in the alternative, for an order authorizing abandonment of all the debtor's assets as being burdensome to the estate, and for such other and further relief as this Court finds appropriate. The United States, on behalf of the Environmental Protection Agency ("EPA"), concurs in the motion to dismiss and objects to the alternative motion to abandon. The debtor objects to dismissal of its Chapter 7 case.

This court hereby deems the Trustee's motion in part a notice of resignation and finds it not unduly burdensome for the administration of this estate to permit the Trustee to withdraw. The U.S. Trustee is hereby directed to appoint a successor trustee pursuant to 11 U.S.C. § 703. In the event that no interim or successor trustee is in place as of 30 days from the date of this Memorandum Decision, the absence of an appointed trustee shall be cause for dismissal pursuant to 11 U.S.C. § 707(a).

For the reasons discussed below, this Court finds neither abstention nor dismissal pursuant to 11 U.S.C. § 305 appropriate to the facts of this case. However, this Court is prepared to issue, pursuant to 11 U.S.C. § 725 an Order Directing Conveyance of the estate's *possessory* interest in the subject real property (but not title thereto) to the EPA or its nominee provided that the following prerequisites are met:

1. The EPA agrees to accept possessory interest in the subject real property.

2. A successor trustee is in place.

3. An agreement acceptable to this court has been reached by and among the EPA, the successor trustee and the debtor as to the circumstances under which title together with possessory interest shall again vest in the same party at a determined time in the future (including but not limited to the contingencies of eventual dismissal or closing of this case at a future date). Such agreement shall also include reporting requirements wherein the EPA agrees to report periodically to the trustee the status of cleanup efforts and expenditures related thereto.

### I

The debtor filed a voluntary Chapter 7 petition with this Court on January 13, 1988, having exhausted its liquid assets in litigation concerning pollution by a prior tenant of the debtor's only substantial asset. The debtor's primary asset is real estate consisting of three commercial buildings and a connecting building suitable for light manufacturing and other commercial activities. The property is presently unoccupied and generates no income. Federal, State and County agencies have alleged that the premise contains toxic waste and pollutants.

The debtor, its former tenant (Circuitron Corp.) and the parent companies of the former tenant (A.D.I. Electronics, Inc. and F.E.E. Industries) reached a settlement agreement wherein the tenant and its parent companies agreed to remove all toxic waste and pollutants from the real estate in accordance with governmental requirements. Thereafter the tenant and its parent companies filed a voluntary Chapter 11 petition in this Court and failed to perform under the settlement agreement. There are pending administrative proceedings against the debtor brought by the County of Suffolk, Department of Health Services,

the N.Y. State Department of Environmental Conservation and the United States Environmental Protection Agency. There is also an action pending in the Supreme Court County of Suffolk by a certain Joanne Johnson against the debtor and others with respect to personal injuries allegedly caused when she was conducting an inspection of the premises.

The debtor has commenced an action against the Great Atlantic Insurance Company of Delaware, Royal Insurance, Safeguard Insurance Company and Hartford Insurance Company for breach of insurance agreements for failure to appear and defend the debtor in claims brought against it, and for failure to reimburse the debtor for loss and damage sustained as a result of the actions of the tenant and its parent companies in causing toxic waste and pollutants to damage the property.

The trustee's motion to dismiss or in the alternative abandon all of the debtor's assets followed shortly after the petition was filed and a hearing was held March 8, 1988 before this Court ("Hearing").

## II

■ The trustee moved to dismiss this case pursuant to § 305 of the Bankruptcy Code.[1] Both the United States and the U.S. Trustee concur that "as a practical matter" and in view of the leading case law on abandonment of polluted assets, dismissal is appropriate under the circumstances of this case. A memorandum in opposition to dismissal was filed by the debtor. We find § 305 inapplicable to the facts at hand, but, as provided above, basis for cause

pursuant to § 707(a) of the Bankruptcy Code[2] may become manifest.

The language of § 305 is clear and its application is narrow. In addition to the creditors' interest it is necessary to prove that dismissal under § 305 would also be in the best interest of the debtor. *In re Commercial Oil Service, Inc.*, 58 B.R. 311 (Bankr.N.D.Ohio 1986). Section 305 is not limited to involuntary cases but "... it certainly will have limited applicability ... to voluntary cases." *In re G–N Partners*, 48 B.R. 459, 461 (Bankr.D.Minn.1985). *See also, In re Pine Lake Village Apartment Company*, 16 B.R. 750, 753 (Bankr.S.D.N.Y.1982).

The Trustee argues that upon dismissal the debtor will be able to retain counsel for the purpose of prosecuting the aforementioned insurance claims, counsel which she finds it inappropriate to retain in view of their lack of disinterestedness and which she further believes cannot be satisfactorily resolved with full disclosure. The United States argues that no purpose is served for the creditors by continuing a Chapter 7 proceeding and that they are equally benefitted by pursuing remedies afforded to them in state court.

Counsel for the debtor argued at the Hearing that one of the benefits of the proceeding is that it provides a centralized forum for the resolution of claims against the debtor.[3]

We are not persuaded that the interests of both debtor and all creditors are such that dismissal pursuant to § 305 is warranted. It is true that the EPA may find dismissal more readily facilitates their cleanup of the site. However, one purpose

---

**1.** Section 305(a)(1) provides:
 "(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—
 (1) the interest of creditors and the debtor would be better served by such dismissal or suspension;
11 U.S.C. § 305(a)(1)

**2.** Section 707(a) provides:
 (a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;
 (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
 (3) failure of the debtor in a voluntary case to file within 15 days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only upon a motion by the United States trustee.
11 U.S.C. § 707(a).

**3.** Record, at 5.

of a Chapter 7 proceeding is to facilitate an equitable distribution of a debtor's assets among all creditors and the record is bereft of evidence as to the exact cost involved in cleanup and the likelihood of success in recovery pursuant to the insurance claims. Absent a showing that the EPA's claim will overwhelm the possibility of recovery by other claimants, dismissal may not be in the interest of other creditors who would benefit from a trustee's collection efforts.

Examples of where dismissal pursuant to § 305 may be appropriate would include voluntary out of court arrangements between the debtor and its creditors and pending foreign proceedings involving the debtor and its creditors. The mere *availability* of an alternative forum is not an underlying rationale for § 305. The legislative history shows that it was thought that less expensive arrangements may be practicable and best serve the interests involved in certain cases, but that this was viewed as the exception rather than the rule.[4]

In denying a motion to dismiss under § 305(a) for a Chapter 11 debtor, the Court in *In re Pine Lake*,[5] stated that this section should be used sparingly and not as a substitute for a motion to dismiss under 11 U.S.C. § 1112(b). Nor should it be used as a substitute for § 707(a).

■ Finally, dismissal pursuant to § 305 is to be used sparingly. Unlike dismissal pursuant to § 707(a), a § 305 dismissal is "not reviewable by appeal or otherwise."[6] We therefore decline to grant the motion pursuant to 11 U.S.C. § 305.

III

■ The trustee moved in the alternative for an order authorizing abandonment of all the debtor's assets. Section 554 of the Bankruptcy Code[7] constitutes the authority for the trustee's power to abandon assets of the estate. Before ordering abandonment, the bankruptcy court must find either: 1) the property is burdensome to the estate; or, 2) the property is both of inconsequential value *and* inconsequential benefit to the estate.[8] The trustee has not persuaded this court that the provisions of § 554 are satisfied with respect to the insurance claims. There appears to be no dispute that the real property in question has a negative value when the cost of cleanup is factored in. We are not persuaded, however, that there is no benefit to the estate to retaining title to the property under the conditions outlined in the proposed Order Directing Conveyance.

The leading case authority on abandonment of a toxic or hazardous waste site is *Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed. 2d 859 (1986) ("Midlantic").[9] In their 5–4 decision, the Supreme Court held that a court may not authorize abandonment of a hazardous waste site pursuant to § 554 absent the formulation of conditions that will adequately protect the public's health and safety.[10]

As in the case before us, Midlantic involved a Chapter 7 debtor, Quanta Resources Corporation ("Quanta"). In that case, the debtor's assets included two waste oil processing facilities, one in Long Island City, New York and the other in

---

**4.** H.R. 95–595, 95th Cong. 1st Sess. 325 (1977), S.R. No. 95–989, 95th Cong. 2nd Sess. 36 (1978), *U.S.Code Cong. & Admin.News* 1978, pp. 5787, 6281, 5822.

**5.** *In re Pine Lake Village Apartment Co.*, 16 B.R. 750 (Bankr.S.D.N.Y.1982).

**6.** 11 U.S.C. § 305(c).

**7.** Section 554(a) provides:
 (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value of the estate.
 11 U.S.C. § 554.

**8.** *In re K.C. Machine & Tool Company*, 816 F.2d 238, 245 (6th Cir. Mich.1987).

**9.** *Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), *reh. den.*, *Midlantic National Bank v. New Jersey Department of Environmental Protection*, 475 U.S. 1091, 106 S.Ct. 1482, 89 L.Ed.2d 736 (1986).

**10.** *Id.* 106 S.Ct. at 762.

Edgewater, New Jersey. In June 1981, the New Jersey Department of Environmental Protection ("NJDEP") discovered that Quanta had accepted more than 400,000 gallons of PCB contaminated oil. The NJDEP and Quanta were negotiating a cleanup of this site when Quanta filed a Chapter 11 bankruptcy petition. The proceeding converted to a Chapter 7 liquidation on November 12, 1981.

At first, the trustee in Quanta maintained a 24 hour security guard service at the Long Island facility at a cost in excess of $1,100 per week. The trustee personally borrowed $20,000 and used most of it to pay for security services.[11] After unsuccessful attempts to sell the property, the trustee notified the creditors and the Bankruptcy Court for the District of New Jersey that he intended to abandon the property pursuant to § 554(a). No party to the proceeding disputed the trustee's allegation that the site was "burdensome" and of "inconsequential value" within the meaning of § 554.[12]

The decision of the Bankruptcy Court authorizing abandonment was affirmed by the District Court of New Jersey.[13] In reversing, the Third Circuit of the Court of Appeals acknowledged that Quanta presented "an issue of major importance under the Bankruptcy Reform Act of 1978" with corresponding social implications:

"It is only recently that the public has learned of the magnitude of the dangers associated with toxic waste disposal; at the same time, the last few years have witnessed a rising tide of bankruptcies. Lurking in the shadows of these phenomena is the specter of the changing fortunes of the nuclear power industry, with the concomitant potentiality for unusable facilities. If trustees in bankruptcy are to be permitted to dispose of hazardous wastes under the cloak of the abandonment power, compliance with environmental protection laws will be transformed into governmental cleanup by default. It cannot be said that the bankruptcy laws were intended to work such a radical change in the nature of local public health and safety regulation—the substitution of governmental action for citizen compliance—without an indication that Congress so intended." [14]

In affirming the Third Circuit Court of Appeals the Supreme Court found, notwithstanding the plain language of § 554, a restriction on the abandonment power implied by Congress in their enactment of other provisions of the Bankruptcy Code and repeated congressional emphasis in other statutes passed in pursuit of their stated goal of "protecting the environment against toxic pollution." [15]

**11.** Cosetti, J. and Friedman, J., "Midlantic National Bank, Kovacs, and Penn Terra: The Bankruptcy Code and State Environmental Law—Perceived Conflicts and Options for the Trustee and State Environmental Agencies," 7 *Journal of Law and Commerce* 65 (1987), citing Record at 4, *In re Quanta Resources*, No. 81-05967 (Blecky, D.N.J. June 29, 1982), Brief of Trustee Appellee at 7, *In re Quanta Resources*, 739 F.2d 912 (3rd Cir.N.J.1984).

**12.** *Midlantic, supra*, 106 S.Ct. at 766 (Rehnquist, J., dissenting).

**13.** There were two paths to Midlantic. After obtaining an order authorizing the abandonment of the Edgewater facility, the trustee moved for a similar order with respect to the Long Island facility. The order of the Bankruptcy Court authorizing abandonment of the Long Island facility was affirmed by the District Court of New Jersey in *Matter of Quanta Resources Corp.*, 55 B.R. 696 (D.N.J.1983), reversed, *Matter of Quanta Resources Corp.*, 739 F.2d 912 (3rd Cir.N.J.1984), cert. granted, *Mid-*

*lantic National Bank v. New Jersey Department of Environmental Protection*, 469 U.S. 1207, 105 S.Ct. 1168, 84 L.Ed.2d 319 (1985), aff'd., *Midlantic National Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986). The order authorizing abandonment of the Edgewater facility was appealed directly to the Court of Appeals on consent of the parties. The order of the Bankruptcy Court was reversed in *In re Quanta Resources Corp.*, 739 F.2d 927 (3rd Cir.N.J.1984), cert. granted, *Midlantic National Bank v. New Jersey Department of Environmental Protection*, 469 U.S. 1207, 105 S.Ct. 1168, 84 L.Ed.2d 319 (1985), aff'd., *Midlantic National Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986).

**14.** *Matter of Quanta, supra*, 739 F.2d 912, at 921–22.

**15.** *Midlantic*, 106 S.Ct. at 762.

Prior to *Midlantic*, case law reflects that trustees would typically seek to abandon property pursuant to § 554 where the estimated cleanup cost exceeded projected market value of the unpolluted asset.[16] This practice was consistent with the traditional role of the trustee and application of the abandonment power in bankruptcy law.[17] The need for a rule of abandonment was manifest in light of the objectives of a bankruptcy proceeding, especially a liquidation proceeding, and the conceptual role of a trustee therein. The overriding purpose of bankruptcy liquidation is the expeditious reduction of the debtor's property to money, for equitable distribution to creditors.[18] The role of the trustee under the Bankruptcy Code is to represent the estate.[19] The duties of the trustee are delineated in the Bankruptcy Code[20] and are largely administrative.

The holding in *Midlantic* implies a duty on the part of the trustee which is independent of the estate's ability to fund his performance of that duty. This decision, evaluated in conjunction with (i) the trustee's capacity to "sue and be sued,"[21] and (ii) federal, state and local environmental regulations which do not limit the liability of a trustee in bankruptcy, threatens to undermine the integrity of the system heretofore developed for the administration of bankruptcy cases.

In recognizing a narrow[22] exception to the abandonment power, the Supreme Court did not address how, as a practical matter, a trustee can bring a property into compliance with the applicable state and local regulations, or at a minimum, take precautions to safeguard the public, absent the funds in the estate to do so.[23]

In seeking to apply § 554 to the facts at hand we must accommodate the *Midlantic* holding without abandoning other policy

16. Abandonment of toxic sites was the general rule prior to Midlantic. *Matter of Quanta Resources* was an exception to this rule. *See e.g. In re Stevens*, 53 B.R. 783 (Bankr.D.Me.1985), *In re Wall Tube & Metal Products Co.*, 831 F.2d 118 (6th Cir.Tenn.1987) at 120 (referencing 1984 authorization by bankruptcy court of conveyance by trustee pursuant to Bankruptcy Rule 6007), *In re Catamount Dyers, Inc.*, 50 B.R. 790 (Bankr. D.Vt.1985), *In re A & T Trailer Park, Inc.*, 53 B.R. 144 (Bankr.D.Wyoming 1985), and *Matter of Borne Chemical Company, Inc.*, 54 B.R. 126 (Bankr.D.N.J.1984). *See also, Matter of National Smelting of New Jersey, Inc.*, 49 B.R. 1012 (D.Colorado 1985) citing *In the Matter of Quanta Resources*, 739 F.2d 912 in its reversal of the order of the Bankruptcy Court authorizing abandonment. Further grounds for reversal included a finding that the trustee failed to establish that the elements of section 554 were met. "The trustee apparently assumes that the cost would be astronomical, but no evidence has been presented on this issue." *Id.* at 1015.

17. Prior to the enactment of the Bankruptcy Code in 1978, no statute expressly authorized a trustee to abandon burdensome property in a liquidation case. Former Sections 64(a)(4), 70(a)(2) and 70(b) of the Bankruptcy Act of 1898 authorized the abandonment of property burdened by, respectively, taxes, pending applications for patents, trademarks and copyrights, and executory leases, including leases of real property. 4 *Collier on Bankruptcy* (15th Ed.) paragraph 554.01. Case law prior to the enactment of the Bankruptcy Code had expanded this power and § 554 represents the codification of

the judicially developed rule of abandonment. *Midlantic*, 106 S.Ct. at 759.

18. *Midlantic*, (Rehnquist, J. dissenting) at 763 citing *Kothe v. R.C. Taylor Trust*, 280 U.S. 224, 227, 50 S.Ct. 142, 143, 74 L.Ed. 382 (1930), 4 *Collier* paragraph 554.01.

19. 11 U.S.C. § 323(a).

20. Section 704 provides in part:
 The trustee shall—
 (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;
 11 U.S.C. § 704(1).

21. 11 U.S.C. § 323(b).

22. *Midlantic*, 106 S.Ct. at 762, n. 9.

23. The Third Circuit discounted the relevance of the extent of the expenditures involved, stating this in itself was not sufficient to outweigh the public interest at stake. The expenditures relevant to the size of the estate may be relevant, however. But nowhere was it alleged that the other assets available in Quanta would have covered all of the cost necessary to comply with state and local regulations. *See* n. 9, *Matter of Quanta*, 739 F.2d 912, 921.
 *Cf.* Express rejection by the Fourth Circuit of the trial court's conclusion that the financial condition of the debtor was irrelevant in *In re Smith–Douglass, Inc.*, 856 F.2d 12 (4th Cir.N.C. 1988).

objectives inherent in the "rising tide" of similar bankruptcies.[24]

We note that case law since *Midlantic* reflects mixed results in the application of § 554.[25] At least one chapter 7 case beset with environmental problems has been dismissed.[26] Dismissal is tantamount to abandonment of the entire estate, not just the affected asset. It is our view that the mere presence of a tainted asset should not preclude a debtor from access to the protections afforded by the Bankruptcy Code. Nor should creditors be denied the forum of this court for the orderly resolution of competing claims, particularly where there are good assets to administer. Unsecured creditors may benefit from the efforts of a trustee to collect on other assets of the debtor and to challenge questionable claims. Unlike many of the reported cases, it is not clear that this debtor was the polluter.

In order for Chapter 7 to continue to be a viable forum for the orderly liquidation of claims, however, a trustee is required. The *Midlantic* holding may result in discouraging capable and prudent professionals from acting as trustees. The proposed conditional order represents an attempt to reconcile the policy of preserving the integrity of the system which has been established for the administration of cases in this Court, for the benefit of debtors and all creditors (including but not limited to the EPA), with the directive of *Midlantic.*

We believe that the holding in *Midlantic* precludes our being able to issue an order which abandons the specific property in question pursuant to § 554—for absent funds in the estate with which to effect compliance and a trustee with sufficient expertise necessary to implement the order, we are as a practical matter without the power to provide for the "health, safety and welfare of the public" in such an order.[27]

■ In the proposed Order Directing Conveyance we authorize conveyance of the possessory interest in the site to the EPA pursuant to § 725.[28] Section 725 addresses situations involving property in which an entity other than the estate has an interest that has not been disposed of

**24.** As of August 1985, it was estimated that 74 hazardous waste facilities had filed for bankruptcy. An EPA study concluded that over the next fifty years, 25–30% of the firms owning land disposal facilities will petition for bankruptcy. Cosetti and Friedman, *supra,* citing U.S. General Accounting Office, *Hazardous Waste, Environmental Safeguards Jeopardized When Facilities Cease Operating* (1986), p. 18.

**25.** Cases denying a trustee's motion to abandon include *In re Peerless Plating,* 70 B.R. 943 (Bankr.W.D.Mich.1987), *In re Stevens,* 68 B.R. 774 (Bankr:D.Me.1987) *reversing In re Stevens,* 53 B.R. 783 (Bankr.Me.1985), *In re Beker Industries Corp.,* 64 B.R. 900 (Bankr.S.D.N.Y.1986). Abandonment has been allowed in the following cases: *In re Smith–Douglass, Inc.,* 856 F.2d 12 (4th Cir.N.C.1988), *affirming In re Smith–Douglass, Inc.,* 75 B.R. 994 (E.D.N.C.Raleigh Div. 1987), *In re Brio Refining,* 86 B.R. 487 (D.N.D. Texas, Dallas Div.1988), *In re Purco,* 76 B.R. 523 (Bankr.W.D.Pa.1987), *In re Franklin Signal Corp.,* 65 B.R. 268 (Bank.D.Minn.1986), *In re Mowbray,* 67 B.R. 34 (Bankr.Ala.1986), and *In re Oklahoma Refining Company,* 63 B.R. 562 (Bankr.W.D.Okla.1986).

**26.** *In re Commercial Oil Service, Inc.,* 58 B.R. 311 (Bankr.N.D.Ohio 1986), *aff'd., In re Commercial Oil Service, Inc.,* 88 B.R. 126 (D.N.D. Ohio 1987).

**27.** This case is distinguished from *In re Commercial Oil Service, Inc., supra,* n. 25, in that there is no express assurance that the environmental authorities are ready to take action as soon as they were free from the restrictions of the automatic stay. While this site has been evaluated for inclusion on the National Priority List by the EPA, pursuant to CERCLA, there is no assurance that environmental authorities will take immediate action to clean the site. A practical effect of dismissal may be the indefinite postponement of cleanup. Openchowski, Charles, "Bankruptcy is Not an Answer", 15 *Environmental Law Reporter* 10314 (1985), in response to Drabkin, Moorman and Kirsch, "Bankruptcy and the Cleanup of Hazardous Waste: Caveat Creditor", 15 *Environmental Law Reporter* 10168 (1985).

**28.** Section 725 provides:
"After the commencement of a case under this chapter, but before final distribution of property of the estate under section 726 of this title, the trustee, after notice and a hearing, shall dispose of any property in which an entity other than the estate has an interest, such as a lien, and that has not been disposed of under another section of this title."

under another section of title 11.[29] It is not disputed that this property is a toxic site which is covered by CERCLA. We therefore find that the EPA has an interest in this site, albeit at present contingent and unliquidated. As stated, we are not satisfied that abandonment in compliance with *Midlantic* can be accomplished in this case. We note that other courts have held abandonment is appropriate under similar circumstances notwithstanding *Midlantic*,[30] but we are concerned lest this piecemeal approach to administering an estate deny to other creditors (1) the ability to monitor expenditures related to the cleanup, and (2) adequate assurance that the property will be sold for the highest possible price.

Apart from § 554, it is unlikely that this property will be disposed of under another section of title 11, unless the case is dismissed for cause. Section 725 gives to this court the authority and flexibility to direct disposal of property not otherwise administered under the Bankruptcy Code. We acknowledge that this application of § 725 is novel, however, it conforms with the broad-sweeping intent of the drafters to give the court flexibility to meet special circumstances.

Upon abandonment the asset reverts to the debtor or party with possessory interest.[31] The debtor is without the funds to bring the site into compliance with environmental regulations. By conveying possessory interest directly to the EPA (i) the EPA will be in a position to carry out its mandate under the Comprehensive Environmental Response Compensation and Liability Act of 1980 ("CERCLA")[32] and (ii) the successor trustee is distanced from (but, it is arguable, not insulated entirely) from potential liability under applicable environmental legislation.

Such an Order Directing Conveyance leaves the safety and welfare of the public at no greater risk than would be the actuality upon dismissal of this case. It avoids the necessity of time consuming litigation in a non bankruptcy forum to facilitate cleanup of the site by the EPA. The proposed order does not favor the EPA over other creditors. By maintaining title to the asset within the estate we implicitly recognize that the EPA is but one creditor and there are other parties at interest which will be affected by the claim filed against the estate by the EPA. These other creditors, together with the EPA have a vested interest in seeing that the site post cleanup is sold for the highest possible price and that the expenditures incurred for the cleanup be prudent.[33]

The creditors have an interest in the successful prosecution of insurance claims, and in insuring that the proceeds recovered not be dissipated or otherwise require extraordinary effort to collect.

In order for such an Order Directing Conveyance to be implemented, however, a successor trustee must be in place.

It is our assessment that a mere lifting of the stay to facilitate cleanup of the site does not adequately address our concerns with respect to potential trustee liability. It is possible that the agreement which we

---

11 U.S.C. § 725.

**29.** The legislative history for § 725 strongly suggests "interest" is restricted to an ownership or security interest. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 382–83 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 96 (1978), U.S.Code Cong. & Admin.News 1978, pp. 6338, 5882. An excessively narrow interpretation of this meaning conflicts, however, with the purpose of § 725 in permitting a determination with respect to property that is not disposed of under another section of the bankruptcy code, "such as by abandonment under 554, by sale or distribution under 363, or by allowing foreclosure by a secured creditor by lifting the stay under section 362."

**30.** *See,* n. 25, *supra.*

**31.** *See Ohio v. Kovacs,* 469 U.S. 274, 105 S.Ct. 705 at 711, n. 12, 83 L.Ed.2d 649.

**32.** 42 U.S.C. §§ 9601 et seq., as amended.

**33.** In some cases the extent of the expenditures and nature of what is required to comply with environmental regulations may be a matter of dispute. *See* comment, "Superfund and the National Contingency Plan: How Dirty is Dirty? How Clean is Clean?" 12 *Ecology Law Quarterly* 89 (1984). The court in *In re T.P. Long Chemical Inc.,* recognized the possibility that a party may challenge the cost incurred by the EPA in removing hazardous waste, 45 B.R. 278 (Bankr.N.D.Ohio 1985), at 287.

contemplate between the EPA and a successor trustee will address this issue.

Thus, having analyzed the alternatives of abandonment, lifting the stay and dismissal pursuant to § 707(a) (*infra*), we believe that our proposed application of § 725 represents the best approach under difficult circumstances.

## IV

 Absent a successor trustee, the only alternative available to this court is dismissal for cause pursuant to § 707(a). The holding in *Midlantic* implies that where there is an estate to administer, such an estate must be administered in compliance with environmental laws. However, there must be an administrator. To the extent that the potential liability to a trustee exceeds that which is reasonable under the scope of a trustee's role and duties as set forth in the Bankruptcy Code, it contravenes the policy of ensuring the integrity of the administration of cases in this Court. We hold that the mere existence of a polluted asset is not cause for dismissal pursuant to § 707(a), however, the reasonable unwillingness of a capable and prudent trustee to serve under the circumstances described herein, shall constitute cause for dismissal pursuant to § 707(a).[34]

 The legislative history of 11 U.S.C. § 707 reveals that the examples of cause referred to are illustrative only and not exhaustive.[35] The determination of whether cause for dismissal exists, is a matter within the sound discretion of the court.[36]

While we have held that the absence of a willing trustee may constitute cause for dismissal pursuant to § 707(a), this case also presents facts similar to cases where the following circumstances have been found to constitute cause for dismissal: an inability to administer the cases because of a lack of funds and a threat to public safety,[37] and an inability to administer a case as a result of an ongoing environmental nuisance.[38]

## CONCLUSION

We believe that the proposed Conditional Order Directing Conveyance of Possessory Interest represents a considered response to the interests of all parties concerned when a debtor beset with environmental problems seeks the protection of this court. Section 554 and relevant case law prior to the enactment of the Bankruptcy Code typically addressed disposal of assets which hindered the expeditious administration of an estate and offered no incremental return to the unsecured shareholders. Abandonment of assets which are the subject of CERCLA and similar environmental legislation, however, is qualitatively different. These assets are typically associated with claims which will be filed against the estate pursuant to cleanup expenditures. They represent not merely zero value or benefit, but a net cost to the estate. Claims filed against the estate are subject to the adversary procedures established in this court for the resolution of contested claims. Access to this forum may be the most appropriate alternative for a debtor beset by environmental problems.

The integrity of the system which has been established for the administration of cases before this court is fundamental to the exercise of our jurisdiction. We recognize that one of the objectives of CERCLA was, in addition to facilitating cleanup directly by the EPA of subject hazardous

---

34. *See In re Mattiace Industries,* 76 B.R. 44 (Bankr.E.D.N.Y.1987) denying a motion to convert a Chapter 11 case to a Chapter 7 citing the potentially unlimited scope of a trustee's liability and dismissing pursuant to § 1112(b).

35. H.R.Rep. No. 595, 95th Cong., 1st Sess. 380 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 94 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787; *see also* 11 U.S.C. § 102 (which, in providing rules of construction, states that the term "including" is not limiting in nature.)

36. *Cf. In re Way,* 2 B.R. 372 (Bankr.N.D.Ohio 1980).

37. *In re 30 Hill Top Street Corp.,* 42 B.R. 517 (Bankr.D.Mass.1984).

38. *In re Charles George Land Reclamation Trust,* 30 B.R. 918 (Bankr.D.Mass.1983), *In re Commercial Oil Service,* 58 B.R. 311 (Bankr.N.D.Ohio 1986), *aff'd., In re Commercial Oil Service,* 88 B.R. 126 (N.D.Ohio 1987).

waste sites, to grant to the EPA the authority to direct a third party to comply with environmental regulations. We believe that the scope of a trustee's duties under the Bankruptcy Code is inconsistent with the potential liability of a bankruptcy trustee under CERCLA and state and local legislation. Therefore, the presence of assets within an estate which present an unreasonable risk of liability to the trustee pursuant to environmental legislation may constitute acceptable cause for resignation of a trustee.

In the event that a successor trustee is not in place as of 30 days from the date of this Memorandum Decision, or such time as this period may be extended by further order of this Court, such event shall be deemed cause pursuant to 11 U.S.C. § 707(a) and this case shall accordingly be dismissed.

SO ORDERED.